294 Ga. 851
FINAL COPY

S13A1433.  WALKER v. THE STATE.

HINES, Presiding Justice.

Pedro Lee Walker ("Walker") appeals from his convictions and sentences for malice murder and armed robbery in connection with the death of Christopher Shuman.  For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Shuman was an insurance agent who would visit a neighborhood to solicit business and collect policy payments. On the morning of April 29, 2011, he was collecting payments in the vicinity of the home of Roger Walker ("Roger"); Roger was Walker's uncle and Walker lived with him.  Shuman often collected payments in cash, and that morning, at least one client paid an insurance premium in cash. Shuman's girlfriend saw him leave his home in the morning and then communicated with him by text messages; at 10:30 a.m., he responded, but did not respond to a text sent at 10:55 a.m.  Shuman did not return home that day,

---

[1] The crimes were committed on April 29, 2011.  On July 13, 2011, a Chatham County grand jury indicted Walker for malice murder, felony murder while in the commission of armed robbery, and armed robbery. Walker was tried before a jury January 3-9, 2012, and found guilty of all charges. On January 10, 2012, he was sentenced to life in prison for malice murder, and a consecutive term of life in prison for armed robbery; the charge of felony murder was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4) (434 SE2d 479) (1993).  Walker moved for a new trial on January 11, 2012, and amended the motion on August 21, 2012.  On March 8, 2013, the motion, as amended, was denied.  On April 5, 2013, Walker filed a notice of appeal; the appeal was docketed in this Court for the September 2013 term and submitted for decision on the briefs.

and his girlfriend and others tried to locate him.

The night before Shuman's killing, Walker received $60 in cash as payment for serving as a bouncer at a bar; he previously had no cash. Walker gave $40 of the $60 to his girlfriend. He and his girlfriend remained together during the early morning of April 29, 2011, and then drove to Roger's house, arriving sometime after 10:00 a.m.; Roger was not at the house. Walker went into the house through the front door while his girlfriend remained in the car, talking on her cell phone. At some point, Walker emerged from the house, retrieved Shuman's business card from the car, and returned to the house. Thereafter, he and his girlfriend went to a motel; Walker asked for the $40 back from his girlfriend, went inside and paid $90 in cash for two nights lodging. He later bought food from a restaurant. Cell phone records showed a call from Walker's cell phone to Shuman's cell phone at 11:04 a.m. on April 29, 2011.

On the morning of April 30, 2011, Roger noted that the fence in his back yard was damaged, and that a shirt had been thrown over an electrical wire. As he had been the victim of burglary in the past, he called the police; however, the responding officer did not believe the damaged fence or the shirt location indicated a crime scene and left. Later, a second police officer responded to a

call from a nearby house regarding a strange car that was parked on the street near Roger's house (the car later proved to be Shuman's). Roger was on the front porch and spoke to this officer about the fence; the officer went to the back yard to investigate the fence and shirt. When she did so, she saw Shuman's shirtless body behind a shed; his cell phone, wallet, and keys were missing. Shuman was dead as a result of multiple injuries from blunt and sharp weapons; he had been beaten, stabbed, cut in the throat area, and possibly strangled.

Evidence obtained from the back yard included the shirt, which was bloody, a bloody knife blade, and a knife handle. Additionally, police found a trail of blood droplets leading to Roger's house, and inside it found streaks of blood and several bloody shoe prints; Roger's shoes did not match the prints, and his clothes had no blood on them. However, the shoes that Walker was wearing on April 30, 2011, matched the tread pattern of the bloody shoe prints, and had drops of blood on them that contained Shuman's DNA.

1. The evidence authorized the jury to find Walker guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Walker contends that the State did not adequately show the chain of

2

custody of the blood-stained shoes from which the blood samples that matched Shuman's DNA were taken, and therefore, the DNA test results should not have been admitted. See *Armstrong v. State*, 274 Ga. 771, 772 (560 SE2d 643) (2002); *Holsey v. State*, 271 Ga. 856, 862 (7) ( 524 SE2d 473) (1999).

First, when the shoes were introduced into evidence, Walker made no objection; he only raised a chain of custody objection when the State sought to enter the scientific findings regarding the DNA evidence.[2] But, even if we consider this enumeration of error to be preserved for appellate review, see *Moore v. State*, 285 Ga. 157, 158 (2) (674 SE2d 315) (2009), there is no error. "[W]hen the State seeks to introduce into evidence an item that is subject to the chain of custody rule, it must establish with reasonable assurance that the item seized is the same as the item being offered into evidence." *Armstrong*, supra. And, the State must show "with reasonable certainty . . . that there has been no tampering or substitution" of the evidence. *Hurst v. State*, 285 Ga. 294, 296 (2) (676 SE2d 165) (2009) (Citation and punctuation omitted.)

Walker complains that not every person who was responsible for

---

[2] In raising this objection, counsel specifically stated that she did not object to the admission of the shoes but objected to the introduction of the DNA evidence.

transporting the shoes from the point they were seized to the forensic laboratory testified at trial, but the failure to have each person who was in control of evidence subject to the chain of custody requirement testify at trial "does not, without more, make the substance or testimony relating to it inadmissible." *Collins v. State*, 290 Ga. 505, 506 (2) (722 SE2d 719) (2012) (Citation and punctuation omitted.) The blood-stained shoes were distinct and recognizable objects, identified by the detectives who seized them and the serologist at the forensic laboratory who received them; there is no merit to a chain of custody objection on the ground that there was not testimony from every person with custody of the shoes before they were delivered to the laboratory. *Felton v. State*, 283 Ga. 242, 246 (2) (b) (657 SE2d 850) (2008).

At the laboratory, swab samples of the blood on the shoes were taken and submitted for DNA analysis; the analyst who conducted the DNA tests received the swabs from the forensic serologist who took them. The swabs did not leave the laboratory, and the written reports of the DNA analysis confirmed the testimony of the serologist and analyst. The trial court did not abuse its discretion in admitting the DNA evidence. *Johnson v. State*, 271 Ga. 375, 382 (13) (519 SE2d 221) (1999). See also *Herrera v. State*, 288 Ga. 231, 233 (3)

4

(702 SE2d 854) (2010).

3. The trial court granted the State's motion in limine to exclude from evidence at trial any information regarding the fact that marijuana was found in the trunk of Shuman's car, parked on the street near Roger's house. During trial, Walker asked the court to revisit the issue, arguing that the State had presented evidence suggesting that Shuman was a person of good character, and that he should be allowed to rebut that evidence; the court denied the motion. Walker urges that if he had been able to present such evidence, the jury might have more readily accepted his argument that Roger was actually Shuman's killer.

> Generally, a murder victim's character is irrelevant and, thus, inadmissible. Evidence that impugns a victim's character cannot be admitted unless it has some factual nexus with the conclusion for which it is being offered. Sheer speculation is insufficient. Otherwise, character evidence would be admitted routinely, disguised as relevant to whatever speculative theory the proponent managed to put forth.

*McBride v. State*, 291 Ga. 593, 595 (3) (732 SE2d 757) (2012) (Citation and punctuation omitted.) Walker points to no evidence connecting Roger with Shuman's purported drug use or alleged involvement in drug activity, and the court did not err in excluding the marijuana evidence. Id.

5

4. Walker contends that his trial counsel failed to provide effective representation in certain respects. In order to prevail on such a claim, he must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. "'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Walker's defense theory was that Roger killed Shuman. See Division

6

3, supra. Walker argues that trial counsel should therefore have welcomed any opportunity for the State to "open the door" into inquiry of Shuman's character, and asserts that trial counsel was thus ineffective in objecting when the State asked witness Graham, "[w]hat kind of person was Chris Shuman?"[3] However, the objection related to a matter which the trial court correctly noted was irrelevant. *McBride*, supra. In any event, Walker fails to show how, if the objection had not been made, any response by the witness would make the issue relevant, and thus fails to establish a reasonable probability that the result of his trial would have been different if counsel had refrained from making the objection. See *Smith v. State*, 292 Ga. 588, 592 (4) (b) (740 SE2d 129) (2013).

(b) Finally, Walker asserts that, in arguing to the trial court that the State had "opened the door" to inquiry about Shuman's character by introducing evidence suggesting that he was of good character, trial counsel failed to note to the court that a State witness testified that Shuman "was a very nice young

---

[3] Trial counsel testified during the hearing on the motion for new trial that she objected "out of habit," rather than as the result of any strategic choice. At trial, the objection was followed by the prosecutor's statement, "I'll move on"; however, defense counsel did not attempt to retract her objection.

7

man," and that this was deficient performance. However, as noted, see Divisions 3 and 4 (a), supra, this argument relates to a matter that was properly determined by the trial court to be irrelevant, and failure to pursue further a meritless argument does not constitute ineffective representation by counsel. *Funes v. State*, 289 Ga. 793, 796 (3) (a) (716 SE2d 183) (2011).

Judgments affirmed. All the Justices concur.

Decided March 28, 2014.

Murder. Chatham Superior Court. Before Judge Karpf.

Steven L. Sparger, for appellant.

Meg E. Heap, District Attorney, Nancy Grey R. Brimberry, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.