In the Supreme Court of Georgia

Decided: September 22, 2014

S14A0832. BRAGG v. THE STATE.

MELTON, Justice.

Following a jury trial, Mary Ann Bragg was found guilty of malice murder, felony murder, and aggravated assault in connection with the murder of her husband, Tom Bragg.[1] On appeal, Bragg contends, among other things, that the trial court erred by admitting similar transaction evidence and by improperly charging the jury on parties to a crime. Bragg further claims that trial counsel rendered ineffective assistance. For the reasons set forth below, we

[1] On November 7, 2005, Bragg was indicted for malice murder, felony murder, and aggravated assault. Following a jury trial ending on September 14, 2006, Bragg was found guilty on all counts. The trial court thereafter sentenced Bragg to life imprisonment for malice murder and a consecutive twenty year sentence for aggravated assault. The felony murder count was vacated by operation of law, Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the aggravated assault conviction was ultimately merged with the malice murder conviction for purposes of sentencing. Bragg timely filed a motion for a new trial on September 25, 2006, which was later amended. Following two substantive hearings on the amended motion, the trial court denied Bragg's motion on February 15, 2013. Bragg timely filed her appeal on March 15, 2013, which was submitted for a decision on the briefs.

affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence reveals that, on September 9, 2002 between the hours of 4:00 a.m. and 6:00 a.m., Tom was killed in his home. The medical examiner determined that Tom's death was caused by blunt force trauma, consistent with hammer strikes to his head. There were no signs of forced entry, and a trail of blood drops led from the bedroom where Tom was found, through the front door, and onto the porch. A single drop of blood was found in the driveway.

That same morning, at approximately 6:30 a.m., Bragg left the home she shared with Tom in Thomaston, picked up her friend, Debra Clay, and drove to LaGrange for an appointment with her psychiatrist. Shortly after Bragg left, Lee Henry, Bragg's neighbor, saw what she believed to be the glow of someone lighting a cigarette on Bragg's screened porch.[2] While waiting for Bragg's appointment, Clay received a phone call indicating that Tom had been murdered, and Clay suggested to Bragg that they return to Thomaston.

Investigators interviewed Bragg on September 9th and again the next

---

[2] The defense introduced this testimony on direct because, at first, Henry thought that it could have been Tom.

2

morning. In both interviews, Bragg expressed concern for her finances, asking when she would receive her insurance money, as she was the beneficiary of two life insurance policies which had been purchased without Tom's knowledge. In a third interview on October 25, 2002, after investigators had seized and searched her home computer, Bragg also admitted to having extra-marital affairs with men she met on the internet.

At trial, the State presented evidence of three similar transactions in which Bragg solicited others to kill her former husband. Bonnie Powell also testified that she had witnessed Bragg threaten to "blow [Tom's] brains out" if she caught him with another woman. Penny Carter and Kristina Wright, friends and family of Bragg, testified that Bragg admitted she had killed Tom after explaining that she had to "get something off her chest."

This evidence was sufficient to enable a rational trier of fact to find Bragg guilty of all of the crimes for which she was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Bragg contends the trial court erred by admitting similar transaction

evidence and failing to limit the jury's consideration of it.[3] To be admitted, similar transaction evidence must meet three requirements: (1) the evidence must be introduced for a proper purpose; (2) sufficient evidence must show that the defendant committed the independent act; and (3) a sufficient connection must exist between the independent act and the charged crime, such that proof of the former tends to prove the latter. Williams v. State, 261 Ga. 640 (2) (b) (409 SE2d 649) (1991).

At trial, the state presented evidence of three occasions when Bragg solicited the assistance of others to murder her prior husband, James Wright. In the first instance, Bragg offered to pay Harry Pennington if he murdered James and made it look like a car accident. In the second instance, Bragg asked her former boyfriend, Archie Storey, to kill James by running him off the road. Finally, in the third instance, Bragg promised to share the money from James's life insurance policy with Rufus Guy if he killed James. "When considering the admissibility of similar transaction evidence, the proper focus is on the

_____

[3] Because this case was tried prior to January 1, 2013, Georgia's old Evidence Code applies here. Under the new Evidence Code, admissibility of this type of evidence would be governed by OCGA 24-4-404 (b).

4

similarities, not the differences." (Citation and punctuation omitted.) Pareja v. State, 286 Ga. 117, 121 (686 SE2d 232) (2009).

Here, Bragg was the primary beneficiary of life insurance policies on both James and Tom. Bragg also experienced martial problems in both relationships, engaged in extra-marital affairs, and openly threatened both men. Due to the similarities between the three prior incidents and the charged crime, the trial court did not abuse its discretion by admitting the similar transaction evidence. Moore v. State, 293 Ga. 676 (1) (748 SE2d 419) (2013). Moreover, the court advised the jury on two occasions to only consider the similar transaction evidence for the proper purposes of identity, state of mind, common design or scheme, and intent. Briggs v. State, 281 Ga. 627 (2) (642 SE2d 74) (2007). These are appropriate purposes.

3. Bragg also asserts that the trial court erred by charging the jury on parties to a crime. "To authorize a jury instruction . . . there need only be produced at trial slight evidence supporting the theory of the charge." (Citation omitted.) Davis v. State, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998). Henry, Bragg's neighbor, testified at trial that, a few moments after Bragg left the house on the morning of Tom's murder, a glow that closely resembled a lit cigarette

appeared on Bragg's porch. During the charge conference, the trial court indicated that the short period of time between Bragg leaving and the glow igniting on the porch suggested that Bragg may have collaborated with another to murder Tom. This evidence, though slight, was sufficient to support a charge on parties to a crime. Medical testimony as well as medical documentation showing that Bragg was physically incapable of causing the type of injuries Tom sustained also supported the theory that another person may have been involved in Tom's murder.

4. Bragg contends trial counsel provided ineffective assistance in a number of ways. To prevail on a claim of ineffective assistance of counsel, Bragg must show that trial counsel's performance was so deficient that it fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced the defense such that a reasonable probability exists that the trial results would have been different but for counsel's performance. Strickland v. Washington, 466 U.S. 668 (II) (104 SCt 2052, 80 LE2d 674) (1984).

(a) First, Bragg contends trial counsel was deficient for failing to file a motion to suppress evidence seized from Bragg's computer. The computer in

question was seized from Bragg's home on September 9, 2002, pursuant to a warrant which authorized investigators to take any "trace" evidence associated with the investigation of Tom's death. A GBI agent testified that it is common practice in a murder investigation to seize personal computers in order to prevent the deletion of evidence. After the seizure of a computer, the GBI then seeks a *second* warrant specifically regarding the computer contents. In this case, the evidence about which Bragg complains, i.e., the e-mails and online conversations evidencing Bragg's extra-martial affairs, was discovered on her computer *after* a second valid warrant authorizing data collection was executed. Even if the initial seizure of Bragg's computer were improper and not remedied by the second warrant, any error in this case would ultimately not be prejudicial, given the overwhelming evidence against Bragg, which included a confession to friends and family. Therefore, this claim of ineffective assistance lacks merit.

(b) Bragg also contends trial counsel rendered ineffective assistance by failing to request a <u>Jackson v. Denno</u> hearing to determine the admissibility of statements Bragg made to investigators as well as medical records that she released while being questioned. Bragg, however, has made no showing that her statements were involuntary. The record shows that, during the course of the

investigation, officers interviewed Bragg on three separate occasions. There is no indication that Bragg was ever held against her will or placed under arrest. To the contrary, she was always free to leave and never subjected to custodial interrogation. As a result, there was no requirement that the questioning officers read Bragg her Miranda rights. See, e.g., Durden v. State, 293 Ga. 89 (3) (744 SE2d 9) (2013). Accordingly, Bragg has failed to prove how counsel's performance was deficient by not requesting a Jackson v. Denno hearing, as any such a request would have been meritless to attain exclusion of the evidence in question.[4] "There is no deficient performance when an attorney fails to object to admissible evidence." (Citation omitted.) Poole v. State, 291 Ga. 848, 857 (8) (734 SE2d 1) (2012).

(c) Bragg asserts that trial counsel rendered ineffective assistance by failing to object to evidence that Bragg supplied Clay with prescription pain medication. Trial counsel made a strategic decision not to object on direct examination to Clay's testimony that Bragg gave her medication, but, instead,

---

[4] Moreover, Bragg reiterated much of this information on her own testimony, some of which was used in an attempt to show that she was too frail to murder her husband.

attacked Clay's testimony on cross-examination. The decision whether to object or cross-examine a witness is a generally a question of trial strategy that does not constitute ineffective assistance. Butler v. State, 273 Ga. 380 (541 SE2d 653) (2001). That is the case here. See also, Donald v. State, 312 Ga. App. 222 (718 SE2d 81) (2011).

(d) Bragg further contends trial counsel was deficient by failing to object or move to strike hearsay testimony. Two investigators testified about the location of Bragg's truck on the morning of Tom's murder and its proximity to a drop of blood found in the driveway. Both investigators relied on a neighbor's description of where the truck had been parked, yet neither had personal knowledge of the truck's location before Bragg left the house. Instead of objecting during the direct examination of the agents, trial counsel attacked the agents' testimonies on cross-examination. Again, such a tactical decision such as whether to object or make an argument on cross-examination falls within the ambit of reasonable trial strategy. See Wright v. State, 274 Ga. 730, 732 (2) (b) (559 SE2d 437) (2002). Counsel's performance was not deficient in this regard.

(e) Bragg contends trial counsel was ineffective for failing to request

9

instructions that properly limited the jury's consideration of the similar transaction evidence. However, the trial court twice instructed the jury to consider the similar transaction evidence as proof of identity, state of mind, common scheme, and intent, which are all proper purposes. Briggs v. State, supra. The trial court, therefore, gave appropriate instructions, and trial counsel was not ineffective by failing to request additional instructions.

(f) Bragg further alleges that counsel's performance was deficient for failing to request a charge on circumstantial evidence. If the case against Bragg had been wholly circumstantial, then the trial court would have been required to give a charge on circumstantial evidence. Massey v. State, 270 Ga. 76 (2) (a) (508 SE2d 149) (1998). However, where as here, a case relies on direct and circumstantial evidence, a charge on circumstantial evidence is only required when there is a written request. Id. Though circumstantial evidence was a factor in the resolution of Bragg's case, there was also direct evidence of her guilt, including the testimony of Penny Carter and Kristina Wright that Bragg admitted she killed Tom. Additionally, the trial court explained the meaning of circumstantial evidence while instructing the jury, even though trial counsel failed to make a written request. Bragg has failed to show how requesting a

10

charge on circumstantial evidence would have changed the outcome of the case.

(g) Finally, Bragg contends that trial counsel's deficiencies collectively prejudiced the defense. Bragg, however, has failed to show that, but for trial counsel's deficient performance, a reasonable likelihood exists that the trial outcome would have been different.

<u>Judgment affirmed. All the Justice concur.</u>