In the Supreme Court of Georgia

Decided: April 26, 2016

S16A0179. BROWN v. THE STATE.

MELTON, Justice.

Following a jury trial, Roger Shannon Brown appeals his convictions for the malice murder and aggravated assault of Dennis Freeman and the aggravated assault of Roger Emory. Brown contends, among other things, that the trial court gave incomplete jury instructions and that he received ineffective assistance of trial counsel.[1] For the reasons set forth below, we affirm.

_____

[1] On June 26, 2008, Brown was indicted for the malice murder, felony murder, and aggravated assault of Freeman; the aggravated assault of Emory; and the aggravated assault of Timothy Shipman. Following a jury trial ending on February 4, 2011, the jury found Brown guilty of all charges except those relating to Shipman. The trial court sentenced Brown to life imprisonment for the malice murder of Freeman and twenty consecutive years for the aggravated assault of Emory. The conviction for felony murder was vacated by operation of law, Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the remaining charge was merged for purposes of sentencing. On February 7, 2011, Brown filed a motion for new trial, amended on October 14, 2013. The trial court denied the motion on May 22, 2014, and Brown filed a timely notice of appeal. Thereafter, his case was docketed to the January 2016 Term of this Court and orally argued on January 4, 2016.

1. Viewed in the light most favorable to the verdict, the record shows that, on the evening of January 18, 2008, Emory, along with his wife, Tammy, his daughter, Laura Free, Timothy Shipman, and Freeman, was working late in an outside wood lot adjacent to a package store. Brown and fellow members of his work crew arrived at the package store to cash their pay checks. At that time, Brown walked behind the package store and began urinating next to a dumpster, in view of Emory and his family and co-workers. Emory asked Brown to stop urinating, and Brown started screaming that Emory was not showing him respect. After a brief confrontation, Brown retrieved a claw hammer and pry bar from his work truck parked nearby. Brown walked toward Emory and the others, beating the pry bar and hammer together in a threatening manner. At this point, Emory was standing by his pickup truck approximately ten feet from Brown, and Freeman was standing approximately five to six feet from Brown. According to Emory, Brown threatened to kill Freeman, who was silently smoking a cigarette. Brown then swung the hammer and struck Freeman in the side of the head, and, as Freeman fell to the ground, fatally wounded, Brown screamed, "Die motherf---er." It is undisputed that Freeman neither challenged Brown nor took any aggressive actions towards him.

Emory testified that Brown threatened to kill him next, so Emory retrieved an ax handle from his own truck to defend himself. At that point, Brown stopped, looked at Freeman's body, and decided to leave the wood lot area. Brown threw the hammer in a wood pile and discarded the pry bar into a pile of boxes. Brown stopped momentarily at the doorway of the package store in order to retrieve his work pay, but he soon fled. Brown was later apprehended by police in a culvert near the scene of the murder.

At trial, Brown testified and contended that he was merely acting in self-defense to ward off Emory's belligerent advances with the ax handle. Brown argued that he swung his hammer to make Emory step back, and he unintentionally hit Freeman when he made that "warning" swing. Brown admitted that Freeman was merely an innocent bystander in the confrontation with Emory.

This evidence was sufficient to enable the jury to find Brown guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SCT 2781, 61 LE2d 560) (1979).

2. Brown contends that the trial court erred by admitting into evidence certain autopsy photographs of Freeman which showed the wound to his skull.

3

We disagree.

With regard to the images in question, the medical examiner testified that the photographs were necessary to show the extent of the skull fracture suffered by Freeman; therefore, the photographs were relevant. See Brown v. State, 250 Ga. 862, 867 (5) (302 SE2d 347) (1983) (holding, under former Evidence Code, that "[a] photograph which depicts the victim after autopsy incisions are made . . . will not be admissible unless necessary to show some material fact which becomes apparent only because of the autopsy"). Before admitting the photographs, the trial court carefully considered whether their probative value was substantially outweighed by the danger of unfair prejudice. By finding that the probative value was not substantially outweighed, the trial court did not abuse its discretion in this case. Brown, supra.[2]

3. Brown argues that the trial court committed plain error by administering an incomplete jury charge regarding Brown's defense of justification. We disagree.

_____

[2] For a general discussion of the relevance of autopsy photographs under the new evidence code, see Moss v. State, Case No. S15A1736 (decided March 7, 2016).

The trial court charged the jury: "To justify *an assault*, it is not essential that there should be an actual assault made upon the defendant. Threats accompanied by menaces, though the menaces do not amount to an actual assault, may in some instances be sufficient to arouse a reasonable belief that one's life is in imminent danger." (Emphasis supplied.) Brown contends that the trial court should have given the standard pattern charge which refers to the justification of a homicide rather than the justification of an assault.[3]

A review of the record shows that the justification charge was initially requested by the State, and it tracked the pattern charge by referring to a homicide rather than an assault. During the charge conference, however, Brown clarified that he only wanted a justification charge for the aggravated assault of Emory and not for the counts regarding the malice murder and felony murder of Freeman. The trial court and the parties concluded that there was no basis for any self-defense claim against Freeman, who had merely been a bystander to the interaction between Brown and Emory. Brown agreed that the justification charge should only refer to Emory, not Freeman, because there was "no other

[3] See Georgia Suggested Pattern Jury Instructions Volume II: Criminal Cases, § 3.16.10.

evidence except for that." As a result, the trial court carefully tailored the justification charge to address the aggravated assault of Emory.

Based on this record, even if the charge were erroneous, Brown invited that error. As such, any contention of plain error by Brown has been effectively waived for review. See Shaw v. State, 292 Ga. 871, 873 (2) n. 3 (742 SE2d 707) (2013) ("[E]ven where plain error appears, reversal is not warranted if the error was invited by the appellant. Shank v. State, 290 Ga. 844, 845 (2) (725 SE2d 246 (2012)"). Even if not waived, however, Brown has not shown plain error.

> "Plain error" requires a clear or obvious legal error or defect not affirmatively waived by the appellant that must have affected the appellant's substantial rights, i.e., it affected the outcome of the trial court proceedings. Stated more succinctly, "the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings." If the failure to give an instruction is shown to constitute such an error, the appellate court may remedy the error by exercising its discretion if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted.) Alvelo v. State, 290 Ga. 609, 614-615 (3) (724 SE2d 377) (2012). In this case, there was no showing of plain error as Brown has proven no harm. Even if the trial court had instructed the jury that self-defense was applicable to a homicide in general, self-defense could be

6

applicable to the specific murder of Freeman *only if* Brown's intent to defend himself against Emory could be transferred. The jury, however, found that Brown did not act in self-defense against Emory when he swung the hammer, and, as such, there was no justification defense which could have been applicable to the murder of Freeman pursuant to any argument of transferred intent. As such, the trial court did not commit plain error by tailoring a self-defense instruction to the specific facts of this case.

4. Finally, Brown contends that he received ineffective assistance of counsel, arguing that the theory of defense that was presented at trial on his behalf was untenable.

> In order to succeed on his claim of ineffective assistance, [Brown] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U.S. 668 (104 SCT 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

7

The record shows that, in an attempt to prevent Brown from being convicted of murder or felony murder, trial counsel raised dual defenses with regard to Freeman's death: (1) he argued that, under OCGA § 16-5-3 (b), Brown committed involuntary manslaughter- by swinging the hammer at Emory, Brown committed a criminally negligent act of self-defense (a lawful act in an unlawful manner); and (2) in the alternative, under OCGA § 16-5-3 (a), Brown committed only an act of reckless conduct by swinging the hammer at Emory- a misdemeanor. Brown now contends that neither of these defenses was legally viable, and, as such, he was somehow harmed.

As a general matter, a tactical decision made by an attorney will not support an ineffective assistance of counsel claim unless it was "so patently unreasonable that no competent attorney would have chosen it." McKenzie v. State, 284 Ga. 342, 347 (667 SE2d 43) (2008). Here, trial counsel reasonably tried to provide the jury with less severely punished alternatives to the charges relating to the murder of Freeman, and, even if we accept Brown's contention that trial counsel's defenses should not have been allowed by the trial court, they were, in fact, allowed. The record shows that the trial court instructed the jury on justification, involuntary manslaughter, and reckless conduct,

notwithstanding Brown's current contentions that the trial court was prohibited from giving these instructions. See Demery v. State, 287 Ga. 805, 809 (3) (700 SE2d 373) (2010). So, at worst, Brown's trial counsel was able to provide him with extra defenses to which Brown now claims that he was not entitled. This is a benefit to Brown, not a harm. There was no prejudice.

Brown also contends trial counsel should have raised a defense based on the concept of transferred intent. Specifically, Brown argues that trial counsel performed deficiently because he did not argue that Brown's intent to defend himself from Emory should be transferred to the act of striking Freeman in the head. This contention fails. The record shows that the jury rejected Brown's contention that he was acting in self-defense even towards Emory, as the jury found Brown guilty of aggravated assault in that context. Therefore, even if it could be said that trial counsel should have raised the issue of transferred intent, there has been no showing of prejudice.

In any event, Brown's contention regarding a transferred intent defense is wholly based on hindsight.

> But hindsight has no place in an assessment of the performance of trial counsel, the United States Supreme Court having instructed that "[a] fair assessment of attorney performance requires that every

9

effort be made to eliminate the distorting effects of hindsight." Strickland, supra, 466 U.S. at 689 (III) (A). Instead, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," id., and to overcome that presumption, [Brown] must show that no reasonable counsel would have failed to [raise a transferred intent defense].

(Citation omitted.) Jones v. State, 292 Ga. 593, 600–601 (7) (d) (740 SE2d 147)

(2013). Brown has failed to make this showing.

Judgment affirmed. All the Justices concur.