302 Ga. 211
FINAL COPY

S17A1177.  FAUST v. THE STATE.

HINES, Chief Justice.

Following the denial of his motion for new trial, as amended, Andray Faust appeals his convictions for felony murder while in the commission of an aggravated assault and possession of a firearm during the commission of a felony in connection with the fatal shooting of Marcellous Brown.  He challenges the sufficiency of the evidence, an evidentiary ruling, aspects of the trial court's instructions to the jury, and the effectiveness of his trial counsel. Finding the challenges to be unavailing, we affirm.[1]

---

[1] The crimes occurred on June 6, 2006.  On November 15, 2006, a Fulton County grand jury returned an indictment against Faust charging him with malice murder, felony murder while in the commission of aggravated assault, felony murder while in the commission of possession of a firearm by a convicted felon, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  He was tried before a jury April 1-6, 2009, and found not guilty of malice murder, but the jury was unable to reach a verdict on the remaining charges, so a mistrial was declared as to those counts of the indictment.  Faust was retried before a jury on February 22-26, 2010, on the charges of felony murder while in the commission of aggravated assault, aggravated assault, and possession of a firearm during the commission of a felony, and found guilty of all three of those charges.  The charges of felony murder while in the commission of possession of a firearm by a convicted felon and possession of

1. Construed to support the verdicts, the evidence showed the following. Brown, Drema Chamblee, and Derek Mitchell would buy shoes at wholesale and sell them out of a car. After being robbed a couple of times, Brown and Mitchell began carrying .38 caliber revolvers for protection. About three days before Brown's death, they were selling shoes at a gas station when they met Faust, discussed shoes, and exchanged phone numbers. On June 6, 2006, Faust called Brown and requested shoes in a certain size. Brown and Chamblee arrived at an apartment complex to attempt to close the sale with Faust. Brown and Faust began to discuss the shoes and their prices. Faust called over a friend, Kevin Milton, who began to haggle with Brown over pricing, and then Faust walked away.

According to both Chamblee and Milton, Faust came running back toward the car, aiming a rifle at Brown. Brown immediately pulled his pistol out,

---

a firearm by a convicted felon were not submitted to the jury, but placed on the dead docket. On February 26, 2010, Faust was sentenced to life in prison for felony murder and a consecutive term of five years in prison for possession of a firearm during the commission of a felony; the aggravated assault merged with the felony murder for the purpose of sentencing. Trial counsel filed a motion for new trial on Faust's behalf on March 4, 2010, and the motion was amended by new counsel on July 22, 2015. The motion for new trial, as amended, was denied on October 29, 2015. A notice of appeal was filed on November 12, 2015, and the case was docketed in this Court for the April 2017 term. The appeal was submitted for decision on the briefs.

grabbed Milton in a headlock, and put the pistol to Milton's head. Faust then fatally shot Brown in the chest. Milton jumped into the back of the car and ran out the other side, and Faust also fled,[2] leaving for Florida just two days later and being apprehended in Tampa on July 26, 2006. Although Faust explained that he went to Florida as part of his employment with a stone mason, that employer denied that he was doing any work out of state at the time. At trial, Faust admitted that he killed Brown, but testified that during negotiations for a purchase by Brown of crack cocaine, Brown drew his weapon first, held Milton at gunpoint, and demanded the drugs. According to Faust, he retrieved his rifle, Brown fired at him first, and Faust then shot Brown.

Faust argues that the evidence presents a classic example of "he said, she said" and that the State failed to corroborate its theory that Faust's motive was robbery, while he presented evidence of self-defense and defense of another. When we review the sufficiency of the evidence, however, we do not re-weigh the evidence or resolve conflicts in witness testimony, but instead we defer to the jury's assessment of the weight and credibility of the evidence. *Mosley v.*

---

[2] Faust took the rifle with him, and Chamblee threw Brown's pistol into some bushes, but neither weapon was recovered.

3

*State*, 300 Ga. 521, 523 (1) (796 SE2d 684) (2017). "As we have explained many times before, conflicts in the evidence, questions about the credibility of witnesses, and questions about the existence of justification are for the jury to resolve." *Anthony v. State*, 298 Ga. 827, 829 (1) (785 SE2d 277) (2016) (citation and punctuation omitted). "And, any lack of evidence of motive . . . is not fatal to a finding of sufficiency. Indeed, it is not necessary for the State to prove motive to establish the crime of felony murder." *Grant v. State*, 298 Ga. 835, 836 (1) (785 SE2d 285) (2016). See also *Romer v. State*, 293 Ga. 339, 341 (1) (b) (745 SE2d 637) (2013) ("while evidence of motive for the homicide is always *relevant* in a murder trial . . . , the State is not *required* to prove the defendant's motive for killing the victim to sustain a murder conviction, since motive is not an essential element of the crime" (emphasis in original)). Chamblee and Milton provided eyewitness accounts that were sufficient to authorize any rational trier of fact to find Faust guilty beyond a reasonable doubt of the crimes for which he was convicted.[3] See *Jackson v. Virginia*, 443 U. S.

---

[3] As already stated, Faust was convicted and sentenced for two crimes: felony murder while in the commission of an aggravated assault, and possession of a firearm during the commission of a felony. By concluding that the evidence was constitutionally sufficient to prove felony murder, we necessarily also mean that our review of the evidence shows that it was constitutionally sufficient to prove Faust guilty of the aggravated assault on which the

4

307 (99 SCt 2781, 61 LE2d 560) (1979); *Cain v. State*, 300 Ga. 614, 614-615 (1) (797 SE2d 466) (2017). The jury was not required to credit Faust's testimony that he fired his rifle in self-defense or in defense of Milton. See *Cain*, 300 Ga. at 615 (1). The question of Faust's justification was for the jury to determine, and it was free to reject his version of the events. See *Mosley*, 300 Ga. at 524 (1).

2. Faust urges that the trial court erred in excluding evidence that Brown had methamphetamine on his person when he was killed. According to Faust, that evidence was relevant to support his theory of the case that Brown had been negotiating a drug deal with Milton when Faust had to defend himself and Milton, and to disprove the State's theory that Brown was an innocent shoe salesman being robbed of his hard-earned money. Under our precedent in cases like this one that were tried under the former Evidence Code, a murder victim's

---

felony murder was predicated. We note, however, that in addition to his challenges to the sufficiency of the evidence of felony murder and possession of a firearm, Faust also asserts, as a separate enumeration of error, that there was insufficient evidence for a rational trier of fact to find him guilty of aggravated assault beyond a reasonable doubt. But Faust was not sentenced for that crime, and no judgment of conviction as to that crime was entered against him. As set forth in footnote 1, supra, the count of aggravated assault merged with the felony murder for which Faust was sentenced. As a result, his separate claim regarding the sufficiency of the evidence of aggravated assault is moot. See *Anderson v. State*, 299 Ga. 193, 196 (1), n. 4 (787 SE2d 202) (2016); *Hayes v. State*, 298 Ga. 339, 340, n. 2 (781 SE2d 777) (2016).

character generally was "irrelevant and, thus, inadmissible. Evidence that impugns a victim's character cannot be admitted unless it has some factual nexus with the conclusion for which it is being offered."[4] *Walker v. State*, 294 Ga. 851, 853 (3) (757 SE2d 64) (2014) ("Sheer speculation is insufficient. Otherwise, character evidence would be admitted routinely, disguised as relevant to whatever speculative theory the proponent managed to put forth." (citation omitted)). And we review the trial court's evidentiary ruling for an abuse of discretion. *Moore v. State*, 295 Ga. 709, 712 (2) (763 SE2d 670) (2014).

In this case, the trial court admitted evidence that the drug ecstasy was found in Brown's system, but excluded evidence that 50 methamphetamine tablets were discovered in Brown's underwear. Faust did not present any evidence that Brown had taken methamphetamine, nor has Faust shown how Brown's possession of methamphetamine would make it more likely that he would attempt to purchase cocaine or to rob Faust and Milton. The only other apparent purpose of showing that Brown possessed methamphetamine and thus

---

[4] "The admissibility of evidence of a victim's character is now governed by OCGA §§ 24-4-404 and 24-4-405." *Gibson v. State*, 300 Ga. 494, 498 (3), n. 8 (796 SE2d 712) (2017).

was not merely an innocent shoe salesman would be to impugn his character. We have found no connection between Brown's possession of methamphetamine and Faust's theory that he did not attempt to rob Brown but instead that Faust justifiably shot Brown when Brown attempted a robbery during a purchase of cocaine after taking ecstasy. Because Faust offers only speculation of any such factual nexus, the trial court did not abuse its discretion in excluding evidence of the methamphetamine found on Brown's person. See *Moore*, 295 Ga. at 712 (2). Moreover, the trial court admitted not only evidence that Brown had taken an illegal drug, but also testimony indicating that Brown had previously been involved in drug deals. Consequently, even assuming that Brown's possession of methamphetamine should have been admitted, the error was harmless, especially in light of the strong eyewitness testimony of Faust's guilt. See *Bell v. State*, 280 Ga. 562, 566 (4) (629 SE2d 213) (2006).

3. Faust contends that the trial court committed plain error by failing to charge the jury on the definition of simple assault as part of its charge on aggravated assault with a deadly weapon. His contention is one of plain error because he concedes that this issue was not preserved for ordinary appellate review. In order for this Court to review the jury charge for plain error, the

7

accused must not have affirmatively waived the alleged error or defect. *Cheddersingh v. State*, 290 Ga. 680, 683 (2) (724 SE2d 366) (2012). To constitute an affirmative waiver, the alleged deviation from a legal rule must have been intentionally relinquished or abandoned. Id. at 684 (2). In this case, the record shows that the trial court gave the charge requested by the State on OCGA § 16-5-20 (a) (1) (simple assault by "[a]ttempt[ing] to commit a violent injury to the person of another"). At the charge conference, the prosecutor asked the court to include the language of OCGA § 16-5-20 (a) (2) (simple assault by "[c]ommit[ting] an act which places another in reasonable apprehension of immediately receiving a violent injury"). Defense counsel opposed inclusion of this second method of simple assault and, after extensive discussion of the charge, never changed her position.[5] Based on this record, even if the failure to give a full charge on simple assault were plain error, Faust invited that error, and any contention of plain error has been waived for review.[6]

---

[5] At the end of the discussion, defense counsel ultimately appeared to oppose not only an instruction on the second method of aggravated assault, but also the instruction on the first method that was given.

[6] Conversely, assuming that this contention has not been affirmatively waived, we see no plain error. "A failure to charge amounts to plain error only to the extent that the failure to charge was erroneous, the error was obvious, the failure to charge likely affected the

8

See *Brown v. State*, 298 Ga. 880, 882 (3) (785 SE2d 512) (2016); *Ashley v. State*, 340 Ga. App. 539, 543 (4) (798 SE2d 235) (2017). See also *Walker v. State*, 301 Ga. 482, 485 (2) (a) (801 SE2d 804) (2017).

For the same reason, Faust has also affirmatively waived his further contention that the trial court erroneously gave a jury instruction on robbery. That instruction was given as part of the charge on justification that defined "forcible felony." See OCGA § 16-3-21 (a). After considerable discussion of the issue with the prosecutor and the court at the charge conference, defense counsel specifically agreed to the inclusion of robbery, in addition to aggravated assault, in the charge on forcible felonies. Consistent with this agreement, after the trial court charged the jury, defense counsel objected only that the definition

outcome of the proceedings, and the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Johnson v. State*, 295 Ga. 615, 617-618 (2) (759 SE2d 837) (2014) (citation and punctuation omitted). We cannot say that the omission of a full charge on simple assault was erroneous where, as here, the jury was properly instructed on general intent and the evidence is undisputed that an injury was intentionally inflicted, *Cantera v. State*, 289 Ga. 583, 584-586 (2) (713 SE2d 826) (2011), and, moreover, the jury charge did track the applicable definition of simple assault in OCGA § 16-5-20 (a) (1), *Scott v. State*, 290 Ga. 883, 886-887 (4) (725 SE2d 305) (2012). Finally, even if there were obvious error, Faust has not shown that it likely affected the outcome of the proceedings because the trial court instructed the jury that the State had the burden to prove every material allegation of the indictment beyond a reasonable doubt, the indictment charged Faust with the felony murder and aggravated assault of Brown "by shooting him with a rifle," and there is no dispute that Brown died as a result of being shot with Faust's rifle. *Johnson*, 295 Ga. at 618 (2).

of robbery was too broad and was not limited to the defense theory of what Brown had done. Because Faust actually agreed to the giving of a robbery charge and objected to that charge only on a different ground from that which he now raises on appeal, appellate review is precluded unless the robbery instruction amounted to plain error which affected his substantial rights and was not affirmatively waived. See *Simpson v. State*, 298 Ga. 314, 316 (3) (781 SE2d 762) (2016); *Woodard v. State*, 296 Ga. 803, 806 (2) (771 SE2d 362) (2015); *Carruth v. State*, 290 Ga. 342, 347 (6) (721 SE2d 80) (2012) ("Georgia law requires that a criminal defendant inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. OCGA § 17-8-58 (a)."). In this case, the record shows that Faust intentionally relinquished any claim that no robbery instruction should have been given. Consequently, even if the instruction defining robbery was plain error, the error was invited, and any contention of plain error has been waived for review.[7] See *Brown*, 298

---

[7] Conversely, assuming that Faust did not affirmatively waive this contention, we fail to see any plain error. "In order to intelligently consider th[e] defense [that the accused was using the force necessary to prevent a forcible felony,] the jury must be informed as to what constitutes the forcible felony relied upon." *Wiseman v. State*, 249 Ga. 559, 560-561 (5) (292 SE2d 670) (1982). Moreover, even if there was obvious error, Faust has not shown that it likely affected the outcome of the proceedings because the charge on robbery enabled the jury properly to consider his defense that he was trying to prevent Brown's robbery of Faust

10

Ga. at 882 (3); *Woodard*, 296 Ga. at 810 (3) (a); *Ashley*, 340 Ga. App. at 543 (4).

4. Faust asserts that his trial counsel provided constitutionally ineffective assistance in several respects. Under *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984), to prevail on this claim, Faust must show both that his "counsel performed deficiently and that, but for the deficiency, there is a reasonable probability that the outcome of his trial would have been more favorable. While the test imposed by *Strickland* is not impossible to meet, the burden is a heavy one." *Speziali v. State*, 301 Ga. 290, 293 (2) (800 SE2d 525) (2017) (citation and punctuation omitted).

> To prove deficient performance, one must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Thus, decisions regarding

---

and Milton. Cf. *Holmes v. State*, 273 Ga. 644, 647 (4) (543 SE2d 688) (2001) (overruling a Court of Appeals holding "that the omission of a charge on the specific forcible felony is, even without a request therefor, substantial error which is harmful as a matter of law"). Contrary to another contention of Faust's, the jury charge at issue did not amount to a comment on the evidence or an expression of the court's opinion of his guilt or innocence, as it was a neutral instruction of law and did not imply in any way either that Faust was attempting to commit a robbery or that Brown was not. See *Ballard v. State*, 297 Ga. 248, 250 (3) (773 SE2d 254) (2015).

11

trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the *Strickland* test, this Court is not required to examine the other.

*Capps v. State*, 300 Ga. 6, 8 (2) (792 SE2d 665) (2016) (citation omitted).

(a) Faust first claims that trial counsel was ineffective for not objecting to the prosecutor's use of a .38 caliber revolver and an AK-47 as demonstrative exhibits that were intended to represent Brown's revolver and Faust's rifle, which were never recovered. See footnote 2, supra. Faust argues that the exhibits were not shown to be sufficiently similar to the guns actually used, that Milton testified the AK-47 did not look like Faust's rifle, and that the prosecutor used the exhibits to prejudice Faust by causing the jury to focus on the much larger size of Faust's weapon. Where, as here, there is no question that real guns were used during the crimes but were not recovered, the introduction of guns of the type believed to have been used was generally permissible in cases, like this one, to which the old Evidence Code applied. *McCoy v. State*, 273 Ga. 568, 570 (3) (544 SE2d 709) (2001). In this case, it was made clear to the jury that the exhibits were not the actual guns, and several witnesses testified to the

similarities and differences between the exhibits and the weapons actually involved. See *Mize v. State*, 269 Ga. 646, 654 (10) (501 SE2d 219) (1998). Under these circumstances, an objection to the demonstrative exhibits would have been wholly without merit, and counsel was not ineffective for failing to make a meritless objection to the State's introduction of those exhibits. See *Wesley v. State*, 286 Ga. 355, 356 (3) (b) (689 SE2d 280) (2010).

(b) Faust next claims that his trial counsel was ineffective when she failed to object to a detective's testimony that contained hearsay, an improper conclusion, and bolstering. After Chamblee and Milton had testified, the detective recounted the statement that Milton had given him. Although Faust first insists that all of that testimony amounted to hearsay that did not come within an exception, he admitted at the hearing on his motion for new trial that Milton's statement to the detective "was a little bit contradictory to what Mr. Milton testified to." Trial counsel testified to her opinion that Milton's statement was not inadmissible hearsay because he had testified and was subject to cross-examination. And Faust has never argued that Milton's statement lacked sufficient inconsistency or otherwise failed to fulfill the requirements to be admissible as a prior inconsistent statement. On motion for new trial, Faust

13

failed to make any showing that, if his trial counsel had objected to Milton's statement, it would not have been admitted as a prior inconsistent statement.[8] See *Welch v. State*, 298 Ga. 320, 322 (4) (781 SE2d 768) (2016) (even if an out-of-court statement was hearsay under former OCGA § 24-3-1 (a), cf. current OCGA § 24-8-801 (d) (1) (A), it may have been admissible as a prior inconsistent statement under former OCGA § 24-9-83, cf. current OCGA § 24-6-613). Moreover, upon review of Milton's testimony and prior statement, we conclude that, if trial counsel had objected to the detective's testimony about Milton's statement, the trial court likely would have exercised its discretion to admit the evidence as a prior inconsistent statement. See *Burney v. State*, 299 Ga. 813, 824 (5) (792 SE2d 354) (2016); *Edwards v. State*, 293 Ga. 612, 614 (2) (748 SE2d 870) (2013); *Cummings v. State*, 280 Ga. 831, 832 (2) (632 SE2d 152) (2006). Because Faust has failed to show how a hearsay objection to Milton's statement would have had merit, trial counsel cannot be adjudged

---

[8] To the contrary, Faust complained in his amended motion for new trial and the hearing thereon that the admission of Milton's statement allowed the State to impeach its own witness. If Faust had raised that issue on appeal, his claim that trial counsel was ineffective for failing to object to Milton's statement would still fail. As the trial court concluded, the State was lawfully entitled to impeach its own witness. See *Edwards v. State*, 293 Ga. 612, 614 (2) (748 SE2d 870) (2013) (under the rule of former OCGA § 24-9-81, carried forward in OCGA § 24-6-607, a party may impeach its own witness).

14

ineffective for failing to make such an objection. See *Burney*, 299 Ga. at 824 (5); *Hendrix v. State*, 298 Ga. 60, 65-66 (2) (c) (779 SE2d 322) (2015).

Faust further complains of the following statements in the detective's testimony that were not part of Milton's statement: "Apparently [Chamblee] thought it was a robbery too";[9] "That series of events was validated through [Chamblee] as the action that took place"; and "Also, that was consistent with pretty much what other people were saying that they observed." On motion for new trial, Faust contended that these statements were objectionable because the detective was claiming that Milton's statement was corroborated by other witnesses at the scene, thereby allowing the State to bolster the credibility of its other witnesses. Trial counsel attacked these portions of the detective's testimony on cross-examination when the detective admitted that he had not personally gone to the crime scene or conducted interviews of Chamblee or anyone else besides Milton. Whether to object during direct examination or instead rely on cross-examination "falls within the ambit of reasonable trial strategy. Counsel's performance was not deficient in this regard." *Bragg v.*

[9] It appears that this statement, considered in context, is not referring to Chamblee's prior testimony, but amounts to a limited reference directly to Milton's own statement that during the incident, Chamblee said "the money's in the car."

15

*State*, 295 Ga. 676, 680 (4) (d) (763 SE2d 476) (2014) (citation omitted).

Moreover, we do not find a reasonable probability that the result of the trial would have been changed by an objection to the detective's brief, general statements regarding the consistency of witness statements, when he was successfully attacked on cross-examination and when both Milton and Chamblee had already given far more detailed testimony, were largely consistent with each other, and were themselves subjected to vigorous cross-examination.

(c) Faust also claims that trial counsel provided him ineffective assistance by failing to object or move for a mistrial in response to two portions of the State's closing argument. First, Faust asserts that counsel should have objected when the prosecutor argued facts not in evidence, specifically, that Faust was out to rob the victim. The evidence shows, however, that Faust asked Brown to come sell him some shoes, that Faust and then Milton discussed prices, that Faust approached with a rifle, and that Chamblee told Faust to take the money, the shoes, and whatever he wanted. From this evidence, the jury was authorized to infer that, even if Faust did not demand money or goods, he intended to commit a robbery. See *Boyd v. State*, 284 Ga. 46, 47 (1) (663 SE2d 218) (2008). And "a prosecutor is granted wide latitude in the conduct of closing

16

argument, the bounds of which are in the trial court's discretion[,] . . . to argue reasonable inferences from the evidence." *Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012). The prosecutor's argument regarding robbery as Faust's motive was "based on permissible inferences and legitimately supported by the facts in evidence," and, "[a]ccordingly, trial counsel's failure to make a meritless objection to the State's closing argument is not evidence of ineffective assistance." *Cooper v. State*, 296 Ga. 728, 731 (3) (770 SE2d 597) (2015).

Faust's other claim that his trial counsel was ineffective during the State's closing argument is that counsel should have objected when the prosecutor asked the jurors to put themselves in the position of the residents of the neighborhood and to speak for the neighborhood with their verdict. The only comment that Faust quotes from the State's closing argument is that "you all have to have the courage to speak up and talk for a community that's too scared to talk for itself." It is appropriate for the prosecutor to urge the jury to speak on behalf of the community. *Gibson v. State*, 283 Ga. 377, 381 (8) (659 SE2d 372) (2008). Contrary to Faust's contention, the prosecutor's argument was not an impermissible "golden rule" argument, the failure to object therefore could not have been patently unreasonable, and Faust has not shown ineffective

17

assistance in this regard. See *Peoples v. State*, 295 Ga. 44, 61 (6) (757 SE2d 646) (2014). Faust also cites a portion of closing argument in which the prosecutor said, among other things, that she was tired of having to talk with the victims of violence and see witnesses and children in neighborhoods that are terrorized by criminals. According to Faust, such argument inappropriately personalizes the case by discussing the neighborhood in an overall societal context to inflame the jury and have it convict not on the facts of the case but on the ills of the area. It is appropriate, however, for the prosecutor to urge the jury to convict for the safety of the community or to curb an epidemic of violence in the community, and it is not improper to emphasize to the jury its responsibility to enforce the law. See *Spencer v. State*, 287 Ga. 434, 440 (4) (696 SE2d 617) (2010); *Wright v. State*, 319 Ga. App. 723, 737 (5) (a) (738 SE2d 310) (2013). Again, therefore, Faust has not established that his counsel's performance was professionally deficient when she failed to object to the State's closing argument.

Judgment affirmed. All the Justices concur.

Decided October 2, 2017.

Murder. Fulton Superior Court. Before Judge Bedford.

Stanley W. Schoolcraft III, for appellant.

Paul L. Howard, Jr., District Attorney, Kevin C. Armstrong, Lyndsey H. Rudder, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.