303 Ga. 221
FINAL COPY

S17A1597.  NATIONS v. THE STATE.

BOGGS, Justice.

Jonathan Nations was convicted of murder and other offenses arising out of the killing of Bobby Swint and the wounding and armed robbery of Kenyatta Moss.[1] His amended motion for new trial was denied, and he appeals, asserting as his sole enumeration of error the admission of his prior armed robbery conviction. For the reasons that follow, we affirm.

Construed to support the verdict, the evidence showed that on June 20,

---

[1] The crimes occurred on June 20, 2012. On September 25, 2012, a Fulton County grand jury indicted Nations for malice murder, five counts of felony murder, armed robbery, hijacking a motor vehicle, and two counts of aggravated assault, as well as possession of a firearm during the commission of a felony, possession of a firearm by a first offender probationer, and possession of a firearm by a convicted felon. One count of felony murder and the charge of possession of a firearm by a convicted felon were nol prossed. Nations was tried before a jury June 24-30, 2014, and the jury found him guilty on all remaining counts. He was sentenced to life imprisonment without the possibility of parole for murder, 20 years to serve consecutively for one count of aggravated assault, and five years to serve for possession of a firearm during the commission of a felony. The trial court ruled that the remaining guilty verdicts merged for the purpose of sentencing, and that ruling has not been challenged. See Dixon v. State, 302 Ga. 691, 696 (4) (808 SE2d 696) (2017). Nations' amended motion for new trial was denied on January 19, 2017, his notice of appeal was filed on January 24, 2017, and the case was docketed in this Court for the August 2017 term. The case was submitted for decision on the briefs.

2012, Moss and his cousin, Swint, came up to Atlanta from Macon to visit a friend. They attempted to purchase drugs from Nations, who said that he knew someone nearby with drugs for sale. A neighbor testified that Moss and Swint left with "Jonathan," whom she identified at trial as Nations. Moss and Swint accompanied Nations to a nearby dead-end street, where he led them to a secluded area, pulled out a gun, and said, "Give it up. You know what it is." He then immediately shot Swint in the side of his jaw, and shot Moss in the foot and leg as he attempted to run away. When Moss collapsed, Nations pointed the gun in his face and told him to give him his money, and Moss threw his money on the ground. Nations walked away, but returned within a few seconds and said, "Give me everything out your pocket. Give me your keys. Give me your wallet. Give me your cell phone, everything." Moss turned out his pockets, and Nations took everything, ran to Moss' car, and drove away.

An eyewitness at the window of a nearby house heard "two loud bangs" and observed Nations going through the pockets of an unconscious man, then moving toward another man lying on the ground, who emptied out his pockets while pleading for his life; the witness heard the man on the ground exclaim, "No brother. No brother. Don't do it." This witness never observed any weapon

2

on either victim, only the gun held by the shooter. Video surveillance footage from another neighbor's home captured the incident and was played for the jury. Moss identified Nations in a subsequent photo lineup, and Nations was arrested in Alabama several days later, after a standoff with law enforcement officers.

The medical examiner testified that Swint was facing away from the firearm when he was shot, that the bullet damaged his spinal cord so that he was immediately paralyzed upon impact, and that the cause of death was a gunshot wound to the face and neck. Moss testified that he was running away when he was shot in the foot and the back of his leg; photographs of his wounds were introduced into evidence.

Nations testified at trial and admitted the shooting, but contended that he fired in self-defense after Swint pulled a gun on him and that he shot Moss because he believed Moss was pulling out a gun as well. Police found no firearms at the scene. Moss' car was found a short distance away, stripped, and Nations admitted that he "had the car wiped down" because "I committed a crime."

At a pretrial motions hearing on May 28, 2013, Nations' attorney announced that she was withdrawing the defense's motion in limine to exclude

3

evidence of prior offenses: the aggravated assault conviction at issue here, and a felony conviction for furnishing items to a convict without the consent of the warden:

> Those actual indictments are already part of the . . . State's indictment in counts 12, 13, and the other aforementioned felony counts. So it would be a moot motion for us to go forward, your Honor, to try to limit their ability to cross-examine him for purposes of impeachment, when in fact, based on the current law in Georgia, they will be able to present this in their case in chief. So based on all of that, we withdraw the defense's motion to exclude evidence of priors.

At trial, the State called a witness who testified that in September 2006, he was robbed by two teenage boys at gunpoint in front of his brother's house in Atlanta. One of the robbers told him "give me everything you have." When the witness' brother emerged from the house, the robbers pointed the gun at his brother, took his keys and the contents of his pockets, and fled the scene in the brother's car. The witness was unable to identify either individual. The trial court instructed the jury on the limited use of this evidence. Nations did not make any objection to the trial court's instruction or to the witness' testimony. After the witness' testimony, the State introduced a certified copy of Nations' 2007 guilty plea and sentence for aggravated assault in connection with the September 2006 robbery. When the trial court asked Nations' counsel, "any

4

objection?" counsel responded, "No, Your Honor. I think it's self-authenticating."

1. Although Nations has not raised the sufficiency of the evidence in his appeal, we note that it was sufficient to support the jury's guilty verdicts under Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. In his sole enumeration of error, Nations complains that the trial court erred in admitting evidence of the September 2006 robbery. Because Nations withdrew his motion in limine, stated that he did not object to the introduction of the certified copy of his conviction during the State's case-in-chief, and failed to object to the witness' testimony, our review is confined to consideration of plain error under OCGA § 24-1-103 (d). This Court's decision in State v. Kelly, 290 Ga. 29 (718 SE2d 232) (2011), prescribes the process for plain error review:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

Id. at 33 (2) (a) (Citations, punctuation and emphasis omitted.) Here, Nations cannot meet this standard.

The State contends that Nations has failed to meet this standard because he affirmatively waived his objection to this evidence by expressly withdrawing his written motion in limine. See Faust v. State, 302 Ga. 211, 216 (805 SE2d 826) (2017). But that was not an intentional relinquishment of Nations' claim of error on his part, because the motion in limine addressed only the question of impeachment by evidence of prior convictions, not evidence of other crimes, wrongs, or acts under OCGA § 24-4-404 (b).

Evidence of other crimes, wrongs, or acts under OCGA § 24-4-404 (b) must be relevant to an issue other than character, its probative value must not be substantially outweighed by its undue prejudice, and the State must show sufficient proof that the defendant committed the act; the trial court's decision is reviewed for abuse of discretion. Bradshaw v. State, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015). Nations' guilty plea offered the jury sufficient proof that he committed the prior act, and Nations acknowledged that evidence of his prior criminal convictions was admissible for impeachment purposes. See OCGA § 24-6-609.

But, pretermitting whether admission of this evidence amounted to "clear or obvious" error, Nations cannot show that the admission of this evidence affected his substantial rights. Crayton v. State, 298 Ga. 792, 799-800 (5) (784 SE2d 343) (2016). Nations testified on his own behalf and admitted that he pled guilty to the prior charge. See id. Moreover, although Nations claimed he acted in self-defense, eyewitnesses testified that they saw no weapons on the victims, saw Nations rifling the victims' pockets, and heard Moss pleading with Nations not to kill him. The evidence indicated that both victims were shot from behind, further undermining Nations' claim of self-defense. Video recordings of the incident were presented to the jury, which had the opportunity to evaluate Nations' conduct for itself. Moreover, Nations admitted to stealing Moss' car, wiping it down, and fleeing to Alabama.

Given the strength of the evidence against him, Nations cannot demonstrate that the prior act evidence affected the outcome of the trial court proceedings. We therefore find no plain error and affirm.

Judgment affirmed. All the Justices concur.

Decided March 5, 2018.

Murder. Fulton Superior Court. Before Judge Campbell.

Juwayn Haddad, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, David K. Getachew-Smith, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General, for appellee.