302 Ga. 147
FINAL COPY

S17A0764.  WILLIAMS v. THE STATE.

PETERSON, Justice.

Derrick Williams appeals from the denial of his motion for a new trial

following his conviction for malice murder over the death of his wife, Finesse

Dawson.[1]  Williams argues that the trial court erred by (1) excluding evidence

regarding drugs found in Dawson's blood; (2) admitting evidence of prior bad

acts by Williams; and (3) allowing an irrelevant and prejudicial demonstration.

We conclude that the trial court committed no reversible error in excluding the

toxicology evidence and that any error in the trial court's decisions to admit the

prior bad acts and allow the State's demonstration was harmless.

---

[1] Dawson was found dead on December 5, 2012.  In April 2013, a Cobb County grand jury indicted Williams on charges of malice murder, felony murder, and two counts of aggravated assault.  After a March 2014 trial, the jury found Williams guilty on all counts. The trial court sentenced Williams to life without parole for malice murder on March 28, 2014.  The felony murder count was vacated by operation of law, and the trial court merged the aggravated assault counts into the malice murder count. On April 2, 2014, Williams filed a motion for new trial that was amended on November 13, 2014.  The trial court denied the motion for new trial in an order entered on August 20, 2015.  Williams filed a timely notice of appeal on September 8, 2015.  The case was docketed to the term beginning in April 2017 and submitted for decision on the briefs.

The evidence at trial showed the following. Williams had a history of violence toward his romantic partners, including Dawson. In addition to the evidence about his other relationships that Williams contends is inadmissible, the jury also heard evidence about several incidents of violence by Williams toward Dawson. A neighbor and two of Dawson's former co-workers testified that, in the years leading up to her death, they saw bruises on Dawson that she attributed to Williams. Dawson's former manager testified that on one occasion she refused to allow Dawson to work (and thereby interact with customers) due to injuries on Dawson's face. In February 2012, Dawson called police and reported that Williams had struck her in the face, slashed her tires, and smashed two cell phones. As a result, Williams pleaded guilty to criminal charges and was on probation at the time of Dawson's death.

On December 5, 2012, Smyrna police performed a welfare check at the home of Williams and Dawson in response to multiple 911 calls placed by Williams's uncle. The police found the home's doors locked and its windows, shades, and blinds closed. After a SWAT team broke in, police found Dawson lying face down on the bed in the master bedroom, deceased. Dawson's body was covered with bruises. Clumps of hair were found on the floor, and at least

2

some of the hair was consistent with being forcibly ripped from Dawson's head. One of her fingers appeared broken. Police also found a metal pipe near Dawson's bed.

Williams was not home when the police arrived. He called a friend, Dedrick Bickerstaff, who said Williams was "frantic," and reported that Dawson was dead. Bickerstaff picked up Williams, who told Bickerstaff that he had struck Dawson with her purse but thought she had overdosed on drugs. At Bickerstaff's encouragement, Williams placed multiple 911 calls to police; although he insisted he was "not running," he refused to turn himself in and used disposable phones that he would discard after a call or two.[2] In his phone conversations with police, Williams said that he had been in an altercation with his wife but had not killed her. He said he had found Dawson cold to the touch after waking up next to her and tried to revive her by performing CPR and placing her in the shower.[3] He told police that Dawson had been taking a lot of

_____

[2] In the first call, Williams requested police assistance at his residence, but the police already were there in response to his uncle's calls.

[3] A detective testified that the bathrooms were dry and that there were no signs that Dawson's body had been dragged from the master bedroom into the master bathroom and back.

pills and he believed the drugs contributed to Dawson's death. Williams also admitted to police over the phone that he had inflicted some of the bruises and marks on Dawson's body.

Williams was arrested at a bus station in Nevada on December 11, 2012. In a subsequent police interview, Williams admitted inflicting some of Dawson's injuries and explained that hitting and choking were a normal part of the couple's sex life, but he insisted that he did not kill his wife. The jury heard recordings of phone calls Williams made from jail in which he apparently referred to Dawson as an "ugly a** b****'" and wondered aloud, "out of all the b****es I done had, how the f*** I get tied up with this b****[?]"

A detective and the medical examiner both testified that Dawson was bruised on virtually every part of her body. The detective estimated that Dawson was struck more than 100 times. The medical examiner testified in great detail to the extent of Dawson's injuries, and dozens of photos of her dead body were admitted, as well as diagrams of Dawson's injuries prepared by the medical examiner. He testified that Dawson's bruising and other injuries were consistent with blunt force trauma, with at least some consistent with being struck by a rod-like object. Notwithstanding the bruises all over Dawson's

4

body, the medical examiner testified that the cause of her death was strangulation, not blunt force trauma. There were no bruises or ligature marks on Dawson's neck, and the sort of facial hemorrhaging sometimes associated with strangulation was absent. But the medical examiner testified that it nonetheless was clear that she had been strangled, given hemorrhaging in her neck and a cut on her neck that appeared to be a defensive wound. There was no evidence of injuries of the sort that might be caused by someone performing CPR, the medical examiner testified. He also testified that he did not think drugs played any role in Dawson's death given that drugs were present in her system in only "low or therapeutic" levels, no evidence of drug overdose (like foam in the mouth) was present, and there was clear evidence that she had been beaten and strangled.

1. Although Williams does not challenge the sufficiency of the evidence, it is our customary practice in murder cases nevertheless to review the record and determine whether the evidence was legally sufficient. Having done so, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Williams was guilty of malice murder. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

5

2. Williams argues that the trial court abused its discretion by excluding testimony regarding drugs found in Dawson's blood. We disagree. At trial, Williams offered one basis for admitting the evidence. He now disavows that basis and offers an alternative theory that he did not advance at trial. Reviewing exclusion of the evidence under that alternative theory for plain error, we find that Williams cannot obtain reversal based on the exclusion of the toxicology evidence because he cannot show that this evidentiary ruling affected his substantial rights.

Williams proffered the testimony of a GBI forensic toxicologist regarding drugs found in Dawson's system. The toxicologist testified outside the presence of the jury that Dawson's blood had tested positive for Alprazolam, an anti-anxiety drug; Cyclobenzaprine, a muscle relaxant; and Methylone, a stimulant. The toxicologist testified that Alprazolam causes drowsiness, light-headedness, confusion, impaired thinking or reaction, and possibly lack of coordination. Similarly, she testified, Cyclobenzaprine causes drowsiness, dizziness, and fatigue. The toxicologist stated that Methylone causes euphoria and possibly confusion or hallucinations. The trial court refused to allow the toxicologist to testify before the jury, ruling that her testimony probably was not relevant and,

6

even if it were, its probative value was substantially outweighed by unfair prejudice, confusion of the issues, and misleading the jury.

Williams argues on appeal that this evidence was relevant to and probative of his defense theory that he applied an amount of force to Dawson's neck that was not lethal but for an intervening variable, such as physiological effects of a drug in Dawson's system. But Williams did not preserve any such argument for ordinary appellate review. Where an appellant challenges the admission of evidence, we are concerned with the sufficiency of the appellant's objection; here, however, where the appellant challenges the exclusion of evidence, we are concerned with the sufficiency of the showing that the appellant, as proponent of the evidence, made at trial. OCGA § 24-1-103 (a) (2) provides that "[e]rror shall not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected and . . . the substance of the evidence was made known to the court by an offer of proof or was apparent from the context within which questions were asked."[4] "This provision does not require a formal offer of proof in every instance, as it expressly states that error also

_____

[4] The new Evidence Code applies in cases tried on or after January 1, 2013. See Olds v. State, 299 Ga. 65, 69 (2) n.5 (786 SE2d 633) (2016). Williams was tried in March 2014, so the new Evidence Code applies in this case.

7

may be preserved if the substance of the evidence is apparent from the record." Lupoe v. State, 300 Ga. 233, 247 (11) (794 SE2d 67) (2016) (citation and punctuation omitted). But the rule also requires that the *reason* for offering the evidence in question be apparent to the trial court. See id. (substance of the evidence not apparent from the record where appellant did not allude to possible bias as reason for asking witness whether he was a member of a particular gang); see also Kenneth W. Graham, Jr., 21 Federal Practice and Procedure § 5040 (2d ed., April 2017 update) ("On appeal, the proponent will be stuck with the theory of relevance advanced in the trial court."). The record does not show that the trial court was alerted that Williams sought to introduce testimony to show that any of the drugs taken by Dawson would make someone more susceptible to asphyxiation by choking. The toxicologist said no such thing in her proffered testimony. And, although Williams elicited testimony from other witnesses that it was possible to accidentally kill someone by pressing on their neck, he did not tell the trial court that he wanted to introduce the toxicology evidence for the purpose of showing that drugs in Dawson's system would have made her more vulnerable to such an "accident." Williams instead argued to the trial court that the drugs could have explained Dawson's injuries in that they

would have made her both "clumsy" and "drowsy" and "explosive, hyperactive" — a basis for admission of the evidence that he now disclaims, stating in his brief that "the alleged victim's behavior was irrelevant" given that he did not claim self-defense. Accordingly, we review this claim only for plain error pursuant to OCGA § 24-1-103 (d). See Walker v. State, 301 Ga. 482, 487 (3) (801 SE2d 804) (2017); Lupoe, 300 Ga. at 247 (11).

We may remedy an error under plain error review if (1) the error was not affirmatively waived by the appellant; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; (3) the error "affected the appellant's substantial rights"; and (4) "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Wilson v. State, 301 Ga. 83, 88 (2) (799 SE2d 757) (2017) (citation omitted) (applying plain error analysis under new Evidence Code). Williams's failure to provide any evidence that any of the drugs taken by Dawson would make someone more susceptible to asphyxiation by choking dooms his claim under plain error review. Even if we assume that the trial court's exclusion of the toxicologist's testimony was an "obvious" error (notwithstanding the lack of evidence connecting the testimony about Dawson's drug use to the cause of her death), Williams cannot obtain reversal on this basis

9

because he has failed to show that the error affected his substantial rights. In order to make that showing, an appellant must show that "there is a reasonable probability that, but for [the evidence's] exclusion at trial, the outcome would have been more favorable to him." Walker, 301 Ga. at 488 (3). This requirement is similar to the showing of prejudice required to prevail on an ineffective assistance of counsel claim. See id. Given that Williams offered no evidence to support his theory that Dawson died because drugs in her system made her more susceptible to asphyxiation, he cannot show that there is a reasonable probability that, if the proffered testimony about drugs in Dawson's system had been admitted, the outcome of the trial would have been more favorable to him. See id. (no plain error in trial court's exclusion of statements by appellant's father where appellant did not show what the statements were); see also Woods v. State, 275 Ga. 844, 849-850 (3) (d) (573 SE2d 394) (2002) (defendant cannot show prejudice from counsel's failure to use videotape at trial, where defendant never introduced tape itself into evidence); Goodwin v. Cruz-Padillo, 265 Ga. 614, 615-616 (458 SE2d 623) (1995) (impossible for defendant to show he was prejudiced by trial counsel's failure to subpoena certain witnesses, given that defendant failed to make any proffer of the uncalled

10

witnesses' testimony).[5]

3. Williams argues that the trial court abused its discretion by admitting evidence of his violent acts against two ex-girlfriends. We conclude that any such abuse of discretion was harmless error.

The court admitted one ex-girlfriend's testimony that in 2002 Williams choked her in an attempt to dissuade her from visiting her family on Thanksgiving Day. About six weeks later, he behaved similarly to prevent her from going out with friends, choking her and hitting her; she called police and Williams was subsequently jailed. She also described another incident in the summer of 2003 in which Williams choked her, hit her, threatened to kill her, and raped her at gun point.

The other ex-girlfriend did not testify, but the jury heard law enforcement testimony regarding three incidents — in February 2008, May 2008, and May

---

[5] Williams also argues that the toxicologist should have been permitted to testify at least to impeach the medical examiner's testimony on direct examination that drugs were found in Dawson's system at only "low or therapeutic" levels. The toxicologist testified in her proffer that Methylone was a controlled substance with no therapeutic level and no test to determine the level of Methylone in Dawson's blood was performed. But the medical examiner already had testified as much on cross-examination, so the toxicologist's testimony on this point would have been cumulative. Any error in excluding it to the extent it was offered for impeachment purposes thus was harmless.

11

2010 — in which Williams behaved violently toward her, and the trial court admitted pictures of some of her resulting injuries. The trial court admitted evidence that Williams pleaded guilty to family violence battery as a result of the February 2008 incident. The jury also received evidence that Williams was charged with battery and false imprisonment as a result of the May 2008 incident and pleaded guilty to the latter charge. And the trial court admitted consent orders that revoked Williams's probation based on his admission that he committed false imprisonment and aggravated assault during the May 2010 incident. Additionally, the trial court admitted a recorded phone call placed by Williams while he was in jail in which he admitted harming his ex-girlfriend in May 2010.

The trial court ruled pre-trial that all of the above-referenced bad acts were admissible to show motive, intent, and absence of mistake or accident. Williams argues that the trial court abused its discretion in admitting this evidence because it was neither relevant nor probative of a permissible purpose and that, even if it were probative, the evidence was far more prejudicial than probative. The State argues that Williams did not preserve this argument, contending that Williams's objections to the other acts evidence were too general.

12

But even assuming without deciding that Williams did preserve his argument and that the trial court erred in admitting the evidence of prior bad acts, we conclude that any such error was harmless and thus does not merit reversal.

> The new Evidence Code continues Georgia's existing harmless error doctrine for erroneous evidentiary rulings. See OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . .")  In determining whether the error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so.  The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict.

Smith v. State, 299 Ga. 424, 431-432 (2) (d) (788 SE2d 433) (2016) (citations and punctuation omitted).

The evidence against Williams was overwhelming.  The jury heard voluminous evidence of Dawson's extensive injuries.  The medical examiner testified unequivocally that her injuries were the result of blunt force trauma (by a rod-like object, at least in some cases) and strangulation.  At the home where police found Dawson's body, they found a metal rod and evidence suggesting that her hair had forcibly been torn out.  There was no evidence of forced entry; rather, the house was locked up and Williams essentially admitted that Dawson

13

had died in his presence. The physical evidence contradicted Williams's claim that he had tried to revive her; there were no signs that he had dragged her into the shower or performed CPR. Despite claiming that he found Dawson unconscious, Williams did not seek medical assistance; instead, he left the scene, ultimately fleeing across the country. Williams told a friend that he had struck Dawson and admitted to police that he had inflicted at least some of Dawson's injuries. No evidence supported Williams's belated speculation that drugs had played a role in Dawson's death.[6] And the jury heard jail phone call recordings in which Williams's disdain for Dawson was apparent.

Moreover, the jury heard from several witnesses who testified to Williams's prior violence toward Dawson. Multiple witnesses testified to seeing, over the course of several years, bruises that Dawson attributed to Williams. The jury heard that Williams pleaded guilty to criminal charges after he struck Dawson in the face and was on probation as a result at the time of

---

[6] As detailed in Division 2, Williams enumerates as error the exclusion of testimony about the side effects of drugs found in Dawson's system at the time of her death. But, as we explained above, Williams failed to provide any evidence that any of the drugs taken by Dawson would make someone more susceptible to asphyxiation by choking, and he has disclaimed on appeal the alternative theory that drugs may have somehow led to Dawson's injuries by affecting her behavior.

Dawson's death. Williams does not challenge on appeal the admissibility of any of this evidence involving his prior violence toward Dawson. Evidence that Williams had previously been violent toward other women added little to this evidence of prior violence toward Dawson. Thus, it is highly probable that the admission of the prior bad acts evidence that Williams challenges on appeal did not contribute to the verdict. The trial court's decision to allow it therefore was not reversible error. See Hood v. State, 299 Ga. 95, 105-106 (4) (786 SE2d 648) (2016) (error in admitting testimony from two witnesses that they had purchased prescription drugs from defendant in the past was harmless where evidence that defendant committed the charged crimes was strong and another witness testified without objection that defendant regularly sold pills); Lance v. State, 275 Ga. 11, 24-25 (31) (560 SE2d 663) (2002) (error in admitting hearsay was harmless in the light of cumulative, properly-admitted evidence).

4. Williams also argues that the trial court abused its discretion by allowing the State to engage in a demonstration regarding the crime. Again, we find that any error in allowing the demonstration was harmless and thus does not merit reversal.

The State performed a demonstration in which one of the prosecutors beat

15

a punching bag at the direction of the detective one hundred times (the number of blows the detective estimated Dawson had received). The detective told the attorney how to strike the bag and repeatedly referred to it as "her." The stated purpose of this demonstration was "to show the volume [of blows] and so the jury gets an illustration."

Williams argues on appeal that the demonstration was irrelevant and speculative and that its probative value was outweighed by the danger of unfair prejudice. The State argues that Williams did not preserve this argument. We conclude that even if Williams did preserve his argument and even if the trial court abused its discretion in allowing the demonstration, any error was harmless. As set forth above, the evidence of Williams's guilt was overwhelming. Moreover, the placement and extent of Dawson's bruises were well-documented by the medical examiner's diagrams and multiple photographs, and the jury heard extensive medical and law enforcement testimony about them. Any effect this ill-considered demonstration may have had on the jury would have been minimal compared to the effect of the properly-admitted evidence before it. It therefore is highly probable that the demonstration did not contribute to the verdict, and the trial court's decision to allow it was not

16

reversible error.

Judgment affirmed.  All the Justices concur, except Hunstein, J., who concurs in judgment only as to Division 3.

Decided October 2, 2017.

Murder. Cobb Superior Court. Before Judge Green.

Jones, Morrison & Womack, W. Carter Clayton, for appellant.

D. Victor Reynolds, District Attorney, Michael S. Carlson, Courtney Veal, Gregg M. Jacobson, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.