311 Ga. 579
FINAL COPY

S21A0448. GRIFFIN v. THE STATE.

MELTON, Chief Justice.

Rufus Griffin appeals his convictions for the malice murder of Kerry Freeman and related offenses, contending, among other things, that the trial court made certain evidentiary errors and that trial counsel rendered constitutionally ineffective assistance.[1] We affirm.

---

[1] On November 17, 2016, Griffin was indicted for malice murder (Count 1); felony murder predicated on armed robbery (Count 2); felony murder predicated on aggravated assault (Count 3); armed robbery (Count 4); and aggravated assault (Count 5). At a trial held from February 5 to February 14, 2018, a jury found Griffin guilty on all counts. The trial court sentenced Griffin as a recidivist under OCGA § 16-7-1 (b) to serve life in prison without parole for malice murder and life without parole for armed robbery. The trial court merged the aggravated assault count (Count 5) with the malice murder count (Count 1), and the felony murder counts (Counts 2 and 3) were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371 (4) (434 SE2d 479) (1993). Griffin filed a motion for new trial on March 14, 2018, and amended it on August 26, 2019 and February 21, 2020. The trial court denied the motion on August 5, 2020. Griffin timely filed a notice of appeal on August 5, 2020, and amended it the same day. Thereafter, Griffin's appeal was docketed to the term of this Court beginning in December 2020 and submitted for a decision on the briefs.

1. In relevant part, the evidence presented at trial shows that, on August 22, 2016, Travis Williams, a friend of Freeman, became concerned about Freeman after Williams witnessed two unknown men riding around in Freeman's car, which Freeman generally did not loan to anyone.[2] One of the men in Freeman's car was wearing Freeman's clothes. Two days later, Williams, along with another friend, went to Freeman's apartment to check on him. The apartment door was cracked open,[3] and Freeman, who had been fatally stabbed in the back, was lying on the floor just inside. Williams called 911, and, after police officers allowed Williams to go inside the apartment, he noticed that a knife that Freeman kept by his bed and a television had been removed from the bedroom.

Later, Williams was alerted that someone had called a "chop shop" to inquire about selling Freeman's car. Police officers tracked

---

[2] Griffin does not challenge the sufficiency of the evidence to support his convictions, and this Court no longer considers as a matter of course sufficiency of the evidence in non-death penalty appeals in which it is not an enumerated error. See *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020).

[3] Freeman's alarm system indicated that the door had been opened at 6:06 a.m. on August 22, 2016, but it was never closed again before Freeman's body was discovered.

2

the number of the "chop-shop" caller to Rolanda Jemison, who was living at a hotel with her son, Lance Jemison. Before Freeman's stabbing, Lance had moved from Alabama to live with Rolanda at the hotel, and he brought Griffin with him. Following interviews, police determined that Rolanda gave Lance the phone used to call the "chop shop." Further investigation revealed that Lance, in turn, occasionally allowed Griffin to use the phone. Rolanda also informed a police officer that, after Freeman's death, Rolanda saw Griffin in Freeman's car.

According to Lance, on August 22, 2016, Griffin, who was wearing new clothes,[4] brought a silver Ford Taurus to Lance and allowed him to use it.[5] Lance later discovered that the car belonged to Freeman, who had been found dead. Lance returned the car to Griffin and confronted him. Griffin told Lance that he killed a man for the car because the man "made a pass at him" and made him uncomfortable.

---

[4] Lance testified that Griffin owned few articles of clothing, so he noticed that the clothes Griffin was wearing that day were new.

[5] Griffin had sold Lance's car in order to buy drugs.

Eventually, Griffin was arrested at the hotel, and he had another cell phone in his possession that he later denied owning. When Griffin was being booked into jail, he named Rufus and Robby Griffin from Alabama as his emergency contacts. While in jail, Griffin made two calls to the number shared by Rufus and Robby, and this phone number was found in the contact list of the cell phone recovered at the time of arrest. Griffin also made two calls from jail to his mother and at least one call to his girlfriend. The number associated with Griffin's mother was in the phone's contact list as "Mom," and the number for Griffin's girlfriend was listed as "Baby Doll."[6]

Although data could not be extracted from the cell phone because it was an older model, the phone's location history could be analyzed. That process showed that early-morning calls made on August 22, 2016, from the cell phone pinged off the cell tower closest to Freeman's apartment. Records also showed that, later that day,

---

[6] At trial, the presence of these contacts in the cell phone was used to show that the phone belonged to Griffin.

Griffin called the Georgia Electronic Benefits Transfer office in order to find out the balance of Freeman's account.

Additional evidence showed that, after Griffin's arrest, he was housed in the same jail as Carlos Anderson. Griffin admitted to Anderson that he had an altercation with a "client,"[7] they got into a scuffle, and Griffin stabbed him and took his car. Griffin explained that he disposed of the knife, and, after driving around in the car, sold it in exchange for drugs.

2. Griffin first contends that, during deliberations, the jury improperly reviewed and considered texts contained in the cell phone he possessed at the time of his arrest. We disagree.

At trial, the State introduced Griffin's cell phone into evidence.[8] In addition, the jury was shown photographs taken of the cell phone's contact list in order to prove that the phone contained personal contacts for the individuals Griffin had called from jail.

---

[7] There was testimony that Griffin had been working as a prostitute.

[8] Griffin's counsel objected on the ground that the State had not shown a proper chain of custody, but the objection was overruled. No other objections were raised.

Following the admission of the cell phone, which had been charged prior to trial, Griffin made no objection to its being sent out with the jury during deliberations. In the jury room, the jurors turned on the cell phone and examined its contents. Later, after the verdict was entered, the jury foreperson informed the trial court that the jury reviewed text messages found on the phone. The foreperson explained that the phone was already on, but they also used one juror's power cord to plug it in at a later point.

Between trial and the time of the hearing on Griffin's motion for new trial, the cell phone was misplaced by the State and could not be found. It is undisputed that the State did not purposely dispose of this evidence. During the motion for new trial hearing, the prosecutor testified that, prior to trial, he reviewed all of the texts on the phone. The prosecutor had no recollection of the content of individual text messages, but he recalled that "there was nothing that stood out in [his] mind as controversial or something that [he] thought would impede the case." He testified that the texts included only "chatter" that neither helped nor harmed Griffin. The

6

prosecutor further testified that he would have notified the defense if there had been any exculpatory information contained in the texts, and, if there had been any inculpatory texts, he would have used them at trial.

Based on this evidence, Griffin's contention that the jury improperly reviewed texts from the cell phone is misplaced, because the cell phone was admitted into evidence and sent out with the jury without objection. A similar situation occurred in *Drammeh v. State*, 285 Ga. App. 545, 548 (2) (646 SE2d 742) (2007).[9] There, like here, a cell phone was admitted into evidence without objection. During deliberations, jurors sent a note asking if they were allowed to consider evidence they had "discovered" on the cell phone. The defendant objected, arguing that review of the cell phone's contents was "tantamount to allowing the jury to conduct an independent investigation of the crime, thereby violating his constitutional rights

---

[9] We note that *Drammeh* was decided under our former Evidence Code, which is not applicable to this appeal. Accordingly, we consider the Court of Appeals' opinion for guidance on the topic of waiver, not for guidance as to the admissibility of any specific piece of evidence.

7

to due process and a public trial, as well as the right to confront witnesses against him." Id. at 548-549 (2). The Court of Appeals rejected this contention, as the defendant cited no legal authority to support his argument. Instead, the Court of Appeals determined that the defendant's claim failed because the phone had been admitted into evidence as a whole, without objection or stipulation. In other words, any objection to the contents of the cell phone was waived, as the cell phone, in its entirety, was admitted into evidence. See id.[10] In this case, the cell phone was admitted as a whole and without objection to its being used during deliberations. As such,

---

[10] Similar holdings have been reached in other jurisdictions. See, e.g., *Solano v. Lewis*, No. CV 12-7570-VAP (E), 2014 U. S. Dist. LEXIS (IV) 57544 (C.D. Cal. Feb. 4, 2014), at *46 (holding that the jury did not access extrinsic evidence when considering what jurors described in their note as "additional evidence on cell phone that was not discussed in trial" because the court admitted the entire phone into evidence, so the contents of the phone also necessarily were admitted into evidence); *People v. Garrison*, 303 P3d 117, 125 (IV) (B) (Colo. App. 2012) (jury properly considered text messages and photographs from cell phone admitted into evidence; such information was not extrinsic evidence because "by turning on the cell phone to discover the text messages, the jury used the cell phone as it was intended to be used and discovered information within the scope and purview of the evidence"); *Haniffy v. Gerry*, 2010 WL 347037 (C) (2), at *7 (D. N.H. Jan. 26, 2010) (information on cell phone admitted into evidence was not "extrinsic" evidence; "once the cell phone was admitted, the jury was entitled to examine it without violating [the defendant's] constitutional rights").

contrary to Griffin's arguments, the contents of the cell phone were subject to the jury's review at that point. See id.[11]

To the extent that Griffin's contention could be construed as alleging an evidentiary error made by the trial court by admitting the whole cell phone into evidence, that contention would be subject to plain-error analysis in the absence of a specific objection at trial.

> First, there must be an error or defect — some sort of "[d]eviation from a legal rule" — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the trial court proceedings." Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error

---

[11] Griffin's reliance on *Chambers v. State*, 321 Ga. App. 512 (739 SE2d 513) (2013), does not alter this result, because that case is wholly distinguishable. In *Chambers*, the jury requested a copy of the trial court's final charge after deliberations had begun. Before the trial court had a chance to respond, one of the jurors conducted legal research on her own mobile device regarding the use of force in defense of habitation. That juror then inappropriately provided a number of legal definitions she had found on the Internet to the other jurors. Id. at 517. The Court of Appeals held that, given this juror's misconduct of considering "extra-judicial" law not provided in the trial court's charge and the State's failure to overcome the presumption that the misconduct was prejudicial, the defendant was entitled to a new trial. Id. at 519.

"'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

(Punctuation and emphasis omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (quoting *Puckett v. United States*, 556 U. S. 129, 135 (II) (129 SCt 1423, 173 LE2d 266) (2009)). Thus, beyond showing a clear or obvious error, "plain-error analysis . . . requires the appellant to make an affirmative showing that the error probably did affect the outcome below." (Citation and punctuation omitted.) *Shaw v. State*, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013).

Here, Griffin has not made such an affirmative showing that any error probably did affect the outcome of his trial. Relying solely on the fact that the State had misplaced the cell phone, Griffin chose not to present any evidence about the contents of the phone at the hearing on his motion for new trial.[12] However, the State did provide

---

[12] While the testimony of jurors about their thought processes during deliberations would have been inadmissible, it nonetheless may have been appropriate to ask what was on the phone. See OCGA § 24-6-606 (b) (allowing questions whether "extraneous prejudicial information was improperly brought to the juror's attention" or whether "any outside influence was improperly brought to bear upon any juror."). See also *Collins v. State*, 308 Ga. 608, 611 (2) (842 SE2d 811) (2020) (discussion of "internal" versus "external" matters); *Beck v. State*, 305 Ga. 383, 385 (2) (825 SE2d 184) (2019) (same).

testimony about the cell phone's contents from the prosecutor who handled Griffin's trial, and the trial court accepted this testimony as credible. In addition, with two confessions to the crime having been made by Griffin, the evidence against Griffin was substantial. Under these circumstances, there was no plain error. See *Shaw*, supra, 292 Ga. at 873 (2).

3. Griffin maintains that trial counsel provided constitutionally ineffective assistance by not investigating the text messages on the cell phone confiscated at the time of his arrest and by not objecting to their admission prior to the phone being sent out with the jury for deliberations. We conclude that Griffin has not shown the necessary prejudice to support his claim.

> To prevail on a claim of ineffective assistance of counsel, [a defendant] must prove both deficient performance and resulting prejudice. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, [a defendant] must show that . . . trial counsel performed in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-690. To establish prejudice, [a defendant] must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the

11

proceeding would have been different." Id. at 694. We need not address both components of this test if [a defendant] has not proved one of them. See *Walker v. State*, 301 Ga. 482, 489 (801 SE2d 804) (2017).

*Watson v. State*, 303 Ga. 758, 761-762 (2) (d) (814 SE2d 396) (2018).

Here, as set forth in Division 2 above, Griffin has not made a sufficient showing of prejudice. Even if we assume that trial counsel performed deficiently by failing to object to the texts contained in the cell phone, "the test for prejudice in the ineffective assistance analysis is equivalent to the test for harm in plain error review." *Roberts v. State*, 305 Ga. 257, 265 (5) (a) (824 SE2d 326) (2019) (citation and punctuation omitted).[13] Accordingly, Griffin's claim of ineffective assistance fails.

4. Next, Griffin argues that he has been denied the opportunity for full and fair appellate review because the text messages the jury viewed are now missing from the record, as the cell phone that

---

[13] Griffin relies on his own speculation as to what the jurors may have seen in order to support his contention of prejudice. Mere speculation, however, is not sufficient to prove prejudice under *Strickland*. See, e.g., *Williams v. State*, 302 Ga. 147, 152 (2) (805 SE2d 873) (2017); *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 616 (458 SE2d 623) (1995).

contained the messages cannot be found. To support this contention, Griffin relies on OCGA § 17-8-5, OCGA § 5-6-41 (f), and *Johnson v. State*, 302 Ga. 188, 197-198 (3) (c) (805 SE2d 890) (2017). This reliance is misplaced. In *Johnson*, this Court considered a situation in which a fourteen-page summary was drafted to re-create the events of a six-day trial. See id. at 188. There, we concluded that the bare-bones summary was insufficient.

Griffin appears to contend that statutory law required that the contents of the cell phone be transcribed for inclusion in the record, although he cites no authority for the proposition that the contents of physical evidence admitted as exhibits must be transcribed by the court reporter. In any event, the prosecutor provided a summary of the phone's contents, and Griffin produced no evidence that contradicted that summary. Moreover, where, as here, an otherwise complete record " 'is missing only one or a few parts of the trial, the appellant is not entitled to a new trial unless he alleges that he has been harmed by some specified error involving the omitted part and shows that the omission prevents proper appellate review of that

13

error.'" *West v. State*, 306 Ga. 783, 787 (2) (833 SE2d 501) (2019) (quoting *Gadson v. State*, 303 Ga. 871, 878 (3) (a) (815 SE2d 828) (2018)). Griffin has raised only speculation about how he might have been harmed, and the State presented the prosecutor's testimony rebutting that speculation, which the trial court credited. Under these circumstances, Griffin's contention that he has not been afforded the means of a full and fair appellate review is without merit. See id. at 787 (2).

5. Griffin next argues that the trial court erred by ruling that he could not introduce evidence regarding Rolanda's involvement in an alleged armed robbery that occurred one month after Freeman's murder in order to argue that Rolanda stabbed Freeman.[14] Again, we disagree.

The transcript indicates that Griffin proffered that this testimony would show that Rolanda and her ex-boyfriend, Clarence Hill, robbed a cell phone store together. To commit the robbery, Hill

---

[14] Although Griffin was prevented from going into the details, he was allowed to ask Rolanda whether she had pending charges against her and whether that fact created any bias on her part in favor of the State.

used a gun and Rolanda used a knife. Griffin argued that the evidence of this robbery was admissible to show that Rolanda may have committed Freeman's murder because a knife had been used during the robbery. The trial court ruled that it would not allow the evidence to be admitted at trial because there was no connection between Rolanda's robbery charge and the events that led to Freeman's death, and the evidence of her apparent involvement in a later armed robbery did not raise a reasonable inference of Griffin's innocence. The trial court also found that there was no evidence at all that Rolanda committed Freeman's murder.

The trial court did not abuse its discretion. Evidence of Rolanda's participation in the subsequent armed robbery was inadmissible. Although a defendant may be entitled to introduce relevant and admissible testimony tending to show that another person committed the crime for which the defendant is being tried, the proffered evidence must raise at least a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has

15

recently committed a crime of the same or similar nature. See *De La Cruz v. State*, 303 Ga. 24, 27 (3) (810 SE2d 84) (2018). See also *Elkins v. State*, 306 Ga. 351, 358 (2) (b) (830 SE2d 217) (2019). "However, '(e)vidence that merely casts a bare suspicion on another or "raise(s) a conjectural inference as to the commission of the crime by another is not admissible."'" *De La Cruz*, supra, 303 Ga. at 28 (3) (.citations omitted). Griffin's argument that the subsequent robbery might prove that Rolanda stabbed Freeman is, at best, a highly conjectural inference. As such, the trial court did not abuse its discretion by excluding this evidence. See id.

6. Lastly, Griffin contends that the trial court erred by denying his motion to suppress a statement he made regarding his connection to the cell phone seized during his arrest. Specifically, Griffin contends that the request for his phone number as part of the standard biographical questions posed before his initial post-arrest interview violated his rights under *Miranda v. Arizona*, 384 U. S. 436, 444-445 (86 SCt 1602, 16 LE2d 694) (1966), by eliciting the statement at issue.

At the *Jackson-Denno*[15] hearing on Griffin's motion, Detective Lynn Shuler testified that, after Griffin was arrested and prior to taking a statement, Detective Shuler filled out a form by asking Griffin for his name, date of birth, gender, height, weight, race, address (including city and state), employment status, and phone number (which could be home, work, or cell phone). Detective Shuler further testified that this form was used for all suspects, and the biographical information was also used for purposes of booking. When Detective Shuler requested Griffin's phone number, Griffin replied, "I don't know my cell phone. I got a cell phone somewhere. I don't know. I thought you all picked it up." Griffin now argues that this statement should have been suppressed.

Both the United States Supreme Court and this Court have held that there is an exception to *Miranda* for general booking questions because these questions do not relate to the investigation of the case and serve a legitimate administrative need. See *Pennsylvania v. Muniz*, 496 U. S. 582, 601-602 (III) (C) (110 SCt

---

[15] See *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

17

2638, 110 LE2d 528) (1990) (plurality); *Franks v. State*, 268 Ga. 238, 239 (486 SE2d 594) (1997). Accordingly, "Georgia courts have allowed questions seeking basic biographical data, such as the suspect's name, age, address, educational background, marital status, and other information required to complete an arrest form," even after a defendant has invoked his right to counsel. *Brooks v. State*, 237 Ga. App. 546, 548 (1) (515 SE2d 851) (1999). Whether a police officer may ask a suspect for his phone number, specifically, under the booking exception to *Miranda*, however, has not previously been decided by this Court, and we need not decide that issue today. Even if we assume without deciding that *Miranda* applied to the question that resulted in Griffin's response, his contention still fails. During Griffin's trial, he was connected to the cell phone by matching his calls from jail to contact numbers in the cell phone, separate from Griffin's statement at booking. Griffin's claim therefore lacks merit because, even if Griffin could show that the trial court committed any error, that error was harmless beyond a reasonable doubt. See *Ensslin v. State*, 308 Ga. 462, 471 (1) (d)

18

(841 SE2d 676) (2020) (an error of constitutional magnitude "may be deemed harmless if the State can prove beyond a reasonable doubt that the error did not contribute to the verdict") (citation and punctuation omitted). Not only was there ample other evidence of Griffin's connection to the cell phone, the evidence included two confessions made by Griffin.

*Judgment affirmed. All the Justices concur.*

Decided May 17, 2021.

Murder. DeKalb Superior Court. Before Judge Barrie.

*Ryan C. Locke*, for appellant.

*Sherry Boston, District Attorney, Deborah D. Wellborn, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.