**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 20, 2023**

# In the Court of Appeals of Georgia

A23A0922. DA SILVA v. THE STATE.

BROWN, Judge.

Following a jury trial, Fernando Da Silva was convicted of two counts of first-degree vehicular homicide, and one count each of driving under the influence of alcohol per se and driving under the influence of alcohol to the extent that it was less safe for him to drive. Da Silva appeals from his convictions and the denial of his motion for new trial, arguing that the trial court committed plain error in its jury charge and erred in finding that he intentionally placed his character in issue and, consequently erred in allowing the State to admit evidence of a prior DUI conviction and the hospital report showing cocaine metabolites in his urine. Finding no basis for reversal, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence." *Butler v. State*, 363 Ga. App. 753 (871 SE2d 902) (2022). So viewed, the evidence shows that at approximately 6:00 p.m. on March 3, 2019, Da Silva was driving his Ford Transit van on Highway 92 in Fayetteville when he swerved directly in front of a witness' vehicle. That witness then observed Da Silva cross into the lane of oncoming traffic and he called 911. A short time later, a second witness observed Da Silva's van stopped in the middle of the road; "it was not moving at all." The second witness stayed behind the van for about three to five minutes before it finally started moving. When the van started moving, it entered the oncoming lanes of traffic, going "back and forth." Da Silva forced one car into a ditch, came back into the second witness' lane of traffic, and then swerved back into oncoming traffic and ran a second car into a ditch. Da Silva then sped up and crashed head on into a third car. According to the driver of the first car that Da Silva ran into a ditch, Da Silva had a "blank stare" on his face; "his eyes [were] really wide"; and "[h]e didn't blink." That driver testified that Da Silva never braked at all before he hit the third car and that the windshield of that car was completely smashed in.

The driver of the second car that Da Silva ran into a ditch testified that she observed Da Silva looking straight ahead, with both hands on the steering wheel and his eyes "wide open"; he never slowed down and never applied his brakes. She observed Da Silva's van run up on the hood of the third car and observed its tires go through the windshield; the driver of the third car died at the scene. When the van reached the top of the car, it flipped. After the windshield was removed, Da Silva was able to exit the van on his own.

A paramedic testified that Da Silva said he was fine and did not remember what happened, but agreed to be taken to Grady Memorial Hospital for treatment. Da Silva refused a blood glucose and would not allow the paramedic to start an IV on him. The paramedic testified that Da Silva had a "strong alcoholic beverage odor" on his breath but denied any alcohol use. The paramedic determined that Da Silva had suffered a closed head injury or concussion. According to the paramedic, Da Silva scored a 15 on his Glasgow Coma Score, which determines the mental status of a trauma patient on a scale of 3 to 15, with 3 being someone who is completely paralyzed, and 15 being someone who exhibits normal eye opening, verbal skills, and motor coordination. But, the paramedic could not say whether Da Silva was "presenting . . . as a sober individual" because it is not his job to conduct field sobriety testing. In

3

this case, Da Silva had taken one step from the van and sat down on the stretcher before he was immobilized to the back board.

A police officer who spoke with Da Silva before he was transported to Grady testified that he did not say a lot and did not really know where he was and that she smelled "a strong, fruity odor, which is common for . . . alcoholic beverages." The officer responded to Grady several hours later, read Da Silva his implied consent warning, and requested that he submit to a blood test at approximately 8:20 p.m. Da Silva refused. When Da Silva was discharged from Grady, the officer arrested him and transported him to jail. During that transport, the officer noticed that Da Silva still had a "[v]ery strong odor of alcohol." The officer subsequently obtained a search warrant for Da Silva's medical records which established that a blood serum enzymatic analysis was performed on Da Silva's blood drawn at 7:49 p.m., and it showed an ethanol level of 260 milligrams per deciliter, which is the equivalent of a blood alcohol concentration of .216. Da Silva was charged with two counts of first-degree vehicular homicide, and one count each of driving under the influence of alcohol per se and driving under the influence of alcohol to the extent that it was less safe for him to drive.

In his defense, Da Silva offered the testimony of a restaurant employee who testified that Da Silva ordered food and two margaritas at approximately 1:25 p.m. on the date of the homicide, and that he left the restaurant about an hour later. Da Silva also testified in his own defense. He claimed that he had no recollection of anything after he left the restaurant because of the impact of the accident, but believes that he may have returned to a job site to complete some tiling work and collect some tools, which he packed into his van. While he admitted consuming alcohol at the restaurant, he denied consuming any other drinks that day. According to Da Silva, he was not intoxicated at the time he ran his van onto the third vehicle and the Grady blood test "is not [his]." Da Silva wears corrective lenses and is "blind as a bat." After Da Silva volunteered, "I'm a law-abiding citizen," the State introduced a prior DUI conviction from 2006, and evidence that Da Silva admitted to medical personnel at Grady that he used cocaine on the day of the homicide and test results from Grady showing that his urine contained cocaine metabolites. According to Da Silva, those test results from Grady also "are not [his]."

1. Da Silva contends that the trial court erred in its charge on the lesser included offense of vehicular homicide in the second degree because it failed to identify which predicate offenses the jury should have considered. Da Silva requested

5

that the trial court charge the jury as follows on the lesser included offense of vehicular homicide in the second degree: "Whoever shall cause the death of another person, without any intention to do so, by violating OCGA Title 40, Chapter 6 other than §40-6-390, §40-6-391, or §40-6-395, shall be guilty of homicide by vehicle in the second degree, when such violation is the cause of said death." During the charge conference, the trial court stated that it would give a charge on the lesser included offense of vehicular homicide in the second degree and the State stated that it had no objection. The trial court and defense counsel then went on to discuss how that charge should read:

> THE COURT: And Counsel, let me ask you this: Do you suggest that I strike the code sections that don't apply?
>
> [DEFENSE COUNSEL]: Yes, Your Honor. I mean, to the extent that those code sections exist, that they would be confusing . . .
>
> THE COURT: Or should I mention, other than driving under the influence?
>
> [DEFENSE COUNSEL]: In any manner, other than as described in, you know, Count I of the indictment, if that makes sense, to reference that if it occurred in any other way, other than how they described it.

6

THE COURT: Well, the only modification I would be inclined to give, it would read as follows, "Whomever shall cause the death of another person without any intention to do so, by violating Title 40, Chapter 6, other than driving under the influence."

[DEFENSE COUNSEL]: Correct, that'd be good.

[THE STATE]: The State, no objection to that, Your Honor.

The trial court instructed the jury as follows:

Whoever shall cause the death of another person without any intention to do so by violating Title 40 of Chapter 6, which is the rules of the road in the Georgia Code Section, other than driving under the influence of alcohol under 40-6-391, shall be guilty of homicide by vehicle in the second degree when such violation causes the death of another.

Da Silva contends that at least slight evidence shows that he committed multiple traffic offenses other than DUI such as speeding,[1] failure to maintain lane, and driving on the wrong side of the road, and that the trial court committed plain error in failing to include those predicate offenses in its instruction.

---

[1] We note that there is no evidence that Da Silva was speeding. While the driver of the second car that Da Silva ran into a ditch testified that Da Silva was "probably traveling 55, 60 miles per hour," and another witness testified that Da Silva sped up before he hit the third car, no evidence was presented of the speed limit on Highway 92 and thus no evidence that he was exceeding any posted speed limit.

7

Here, Da Silva's requested charge on vehicular homicide in the second degree was almost identical to the charge given and did not include the predicate offenses he now complains were erroneously omitted. Moreover, he participated in crafting — and agreed to — the charge that ultimately was given to the jury. "Based on this record, even if the charge were erroneous, [Da Silva] invited [the] error. As such, any contention of plain error by [Da Silva] has been effectively waived for review." *Brown v. State*, 298 Ga. 880, 882 (3) (785 SE2d 512) (2016). See also *Nelson v. State*, 325 Ga. App. 819, 821 (755 SE2d 217) (2014) ("[a] party cannot invite error by requesting a certain jury instruction, and then complain on appeal that the instruction, when given, is incorrect") (citation and punctuation omitted). "Appellant cannot be heard to complain about any alleged error, including plain error, which [his] actions engendered." (Citation and punctuation omitted.) *Handy v. State*, 350 Ga. App. 490, 493 (2) (b) (829 SE2d 635) (2019), disapproved on other grounds, *McClure v. State*, 306 Ga. 856, 864 (1), n.17 (834 SE2d 96) (2019). See also *Jackson v. State*, 234 Ga. 549, 553 (216 SE2d 834) (1975) ("A defendant will not be heard to complain that the trial court failed to give a complete charge to the jury where the incompleteness arose from instructions requested by the defendant and there was no request or objection by the defendant regarding such incompleteness. A defendant will not be allowed to

8

induce an asserted error, sit silently hoping for acquittal, and obtain a new trial when that tactic fails.").

2. Da Silva contends that the trial court erred in finding that he intentionally placed his general character in issue and, therefore, erred in permitting the State to introduce his prior DUI conviction and the hospital report that showed cocaine metabolites in his urine. We disagree.

During direct examination, Da Silva testified that he remembered waking up in the hospital and missing his eyeglasses. Da Silva explained that he wears prescription glasses and that he has an optometrist in Pompano/Deerfield Beach, Florida, but that he could not remember the name of the practice. Counsel then asked that Da Silva be allowed to retrieve the name from his cellphone. When Da Silva stated that the phone was off and asked the trial court to give him a moment, the trial court responded, "Yes sir. And I'll even let it beep or ring or whatever it does when it pops up, sir." Da Silva responded, "Well, I would like to say I'm a law-abiding citizen, sir." Before the court adjourned for the day, and prior to cross-examination, the State advised that Da Silva's comment had placed his character in issue and opened him up to be impeached by any prior offenses. The trial court agreed. The following day, prior to its cross-examination, the State advised that it was going to

9

introduce evidence that Da Silva had admitted to hospital personnel that he had used cocaine, which was later confirmed by a urine test, and that he was arrested in Florida in 2005 for DUI and convicted of that charge in 2006. Defense counsel objected to admission of the evidence, arguing that the trial court had already ruled that past bad acts were inadmissible and Da Silva was referring only to "past law-abidingness." Counsel also argued that the evidence was prejudicial and inadmissible under OCGA § 24-4-403, but the trial court rejected this argument.

Although Da Silva argues that the issue is one of opening the door to character evidence, "our examination of what transpired at trial reveals that the issue is more properly characterized as impeachment by disproving a fact." *Parker v. State*, 339 Ga. App. 285, 288 (1) (793 SE2d 173) (2016), citing OCGA § 24-6-621. Pursuant to that Code section, "[a] witness may be impeached by disproving the facts testified to by the witness." OCGA § 24-6-621. By volunteering that he is "a law-abiding citizen," Da Silva opened the door to the State impeaching his testimony with evidence of his prior DUI conviction and his admitted cocaine use. See *Parker*, 339 Ga. App. at 288-290 (1). See also *Osborne v. State*, 193 Ga. App. 276, 278 (4) (387 SE2d 383) (1989) (State was entitled to impeach defendant with evidence of prior arrest after he volunteered during direct examination that he has "never been convicted of anything

10

and . . . never been in trouble before" and then stated during cross-examination that he felt his statement was truthful). Cf. *Carcamo v. State*, 348 Ga. App. 383, 393-394 (2) (d) (823 SE2d 68) (2019) (failure to raise futile objection did not constitute ineffective assistance where State was entitled to impeach defendant with evidence of prior arrest after defendant volunteered that he had "'never had any problems with the law before'").

3. Da Silva contends that even if the evidence of cocaine metabolites was admissible for impeachment purposes, it should have been excluded pursuant to OCGA § 24-4-403 ("Rule 403").[2] We disagree.

"[T]he exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used only sparingly." (Citation and punctuation omitted.) *Dunbar v. State*, 309 Ga. 252, 256 (2) (845 SE2d 607) (2020). Under the circumstances of this case, we cannot say that the trial court abused its discretion in determining that the probative value of the evidence outweighed the danger of unfair prejudice. Da Silva asserts that the admission of this evidence was "unduly

---

[2] OCGA § 24-4-403 states: "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

11

prejudicial, confused the issues, and misled the jury" since there was no information about what metabolites are or how long they remain detectable in an individual's urine. However, the State introduced the evidence only after Da Silva himself volunteered that he was an upstanding citizen who does not break the law. This voluntary statement followed directly on the heels of Da Silva's testimony unequivocally denying that the Grady blood test was his or that he was intoxicated at the time that he committed the vehicular homicide, but providing no explanation for his actions, except for implying that he is "blind as a bat" and that he may have lost his glasses during the accident. Moreover, in its charge to the jury, the trial court quoted OCGA § 24-6-621, and also instructed the jury that the evidence of metabolites could only be "consider[ed] . . . insofar as it may relate to attacking the credibility of the defendant and not for any other purpose. You shall not use this evidence in deliberations of guilt or innocence of the specific crimes charged today." The trial court did not abuse its discretion in admitting the evidence.

*Judgment affirmed. McFadden, P. J., and Markle, J., concur*.